UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

RAMINDESIGN, LLC, a Florida
limited liability company,

      Plaintiff,

vs.

JACEK SKARZYNSK and OLGA
SKARZYNSKI,

      Defendants.
_____/

Case No.:

## COMPLAINT

Plaintiff Ramindesign, LLC complains against Defendants Jacek Skarzynski and Olga Skarzynski, and states:

### NATURE OF ACTION

1. This action arises from Defendant's Jacek Skarzynski's breach of the parties' agreement whereby Plaintiff Ramindesign, LLC was engaged to plan, develop and manage the construction of a specialized luxury single family home in Miami.

### PARTIES

2. Plaintiff Ramindesign ("Ramindesign") is a Florida limited liability company with its principal place of business in Miami-Dade County, Florida.

3. Defendant Jacek Skarzynski ("Jacek") is a citizen and resident of the State of New York and is married to Defendant Olga Skarzynski.

4. Defendant Olga Skarzynski ("Olga") is a citizen and resident of the State of New York and is married to Defendant Jacek Skarzynski.

**JURISDICTION AND VENUE**

5.  This Court has subject matter jurisdiction under 28 U. S. C. §1332(a)(1 ) because this is an action between "citizens of different States" and the matter in controversy exceeds $75,000, exclusive of interest and costs.

6.  Pursuant to the parties' agreement, they agreed to resolve any disputes arising under or in connection with their contract in a court of law. Venue is proper in this district under 28 U.S.C. §1391(b)(2), because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred here and/or a substantial part of property which is the subject of this action is situated here.

**COMMON ALLEGATIONS**

7.  Plaintiff is engaged in the development of "spec" luxury homes and has a proven track record of delivering quality high end and stylistic luxury personal residences.

8.  On or about February 15, 2021, Jacek and Olga purchased the real property at 1413 North Venetian Way, Miami, FL 33139 ("Property") for approximately $5,950,000. The Property is located on San Marco Island in Biscayne Bay, an area serviced by the Venetian Causeway, and known for its spacious luxury waterfront homes.

9.  In late 2021, Jacek was introduced to Ramindesign after he heard about its work in redeveloping the property at 10 West San Marino Drive, Miami Beach, FL 33139 ("10 West Property"), resulting in the construction of a luxury single family residence. Defendant told Plaintiff's principal, Ramin Aleyasin, about his purchase of the Property and asked Mr. Aleyasin to build him a home there modeled on the 10 West Property. Defendant told Mr. Aleyasin that his plan was to resell the home and make a substantial profit.

10. Thereafter, the parties engaged in extensive negotiations which resulted in the written agreement dated January 27, 2022 ("Agreement") between Jacek and Ramindesign. A copy

of the parties' Agreement is attached to this Complaint as Exhibit "1."

11. Pursuant to the Agreement, Ramindesign agreed to plan, develop and manage the construction of a "spec" single family home on the Property. The plan and design of the home would be inspired by the 10 West Property which the Agreement denotes as the "baseline." The Agreement further stated that its scope was the development of residential real estate and gave Ramindesign full and sole discretion to plan, design and oversee the construction. The Agreement provided for work to commence on February 15, 2022 and for the project to be substantially completed by November 16, 2023, with a final completion date of February 28, 2024.

12. Section 5.2 of the Agreement established $6.5 million as the "Guaranteed Maximum Price" of the construction, but noted that this amount could be increased. Additionally, the Agreement had a host of exceptions which could increase this project cost including Ramindesign's fees. Among other things, the Agreement provided for the Guaranteed Maximum Price to increase by $500,000 to $7 million in the event "material costs increase because of the supply shortages and inflation caused by the Covid-19 pandemic." The Agreement further provided that "[s]hould such increases in the cost of materials exceed the total sum of $500,000.00, the parties will discuss such increases to come to a mutual agreement. Contractor [Ramindesign] will provide Owner [Jacek] with documentation regarding any claim for such increases." All cost increases were to be documented by a change order signed by the parties.

13. In addition, the Agreement authorized Plaintiff to unilaterally make unlimited project cost changes which did not exceed $25,000, with notice to Defendant. For project cost changes that exceeded $25,000, the Agreement provided for the parties to mutually agree to them and for a change order to be issued in each instance and signed by both of the parties.

14. As set forth in Exhibit "B" to the Agreement, in return for Ramindesign's work,

3

Jacek agreed not only to pay all project costs but to pay Plaintiff a fee equal to twenty (20%) percent of all costs of the project, even if they increased:

> Contractor will earn its fee equal to twenty (20%) percent of the Contract value of $6,500,000.00 or $1,300,000.00, irrespective of any adjustments, alterations or changes requested by Owner that have the effect of reducing Owner's cost or any adjustments, alterations or changes that Owner requests to the Contract project parameters that result in a deviation from the Contract's "Spec Project" goals as established in this Exhibit "B". If the Contract cost increases through adjustments, alterations or changes requested by Owner, Contractor will earn its twenty (20%) fee on any increased or additional cost.

(Exhibit "1," Agreement, Ex. "B"). Moreover, under the Agreement's Exhibit "B," even if the project costs were lower than $6.5 million, Plaintiff would be entitled to a fee calculated on twenty (20%) percent of $6.5 million. The $6.5 million amount was based upon a calculation of a project building cost of $850 per square foot.

15. Section 12.1.1 of the Agreement required that Jacek pay Ramindesign's fees according to "the Progress Payment Requests" which Plaintiff submitted to him during the course of the work. Under Section 5.1.1 of the Agreement, payment was required five (5) days after delivery of a progress payment request. Moreover, Section 3 of the parties' Agreement required Jacek to make his progress payments in accordance with the contract.

16. Section 6.4 of the Agreement provided that Plaintiff's fee could be equitably adjusted upwards or downwards to avoid substantial inequity to either Ramindesign or Jacek:

> If no specific provision is made in Article 5 for adjustment of the Contractor's Fee in the case of changes in the Work, or if the extent of such changes is such, in the aggregate, that application of the adjustment provisions of Article 5 will cause substantial inequity to the Owner or Contractor, the Contractor's Fee shall be equitably adjusted on the same basis that was used to establish the Fee for the original Work, and the Guaranteed Maximum Price shall be adjusted according.

(Exhibit "1," Agreement, §6.4).

17. As the project proceeded, material and labor costs markedly increased leading to

significant project cost increases. Ultimately, the costs increased to $1,100 per square foot.

18.     Mr. Aleyasin discussed all of the increases in cost with Jacek and he agreed to all of them during the course of the project until the issuance of the last progress payment request, number 13 in late September 2023. Despite the Agreement's requirement the parties sign a change order for costs exceeding $25,000, Jacek refused to sign any written documentation of cost changes, insisting upon oral understandings with Plaintiff's manager, Mr. Aleyasin. Ramindesign nonetheless, documented each cost increase by line item in each of its progress payment requests to Jacek which Jacek was required to approve. Additionally, as Jacek used construction financing, the payment requests were approved as well by his construction lender, TD Bank. In all cases, except for the last progress payment, which is discussed *infra*, Jacek approved all of cost increases documented in Plaintiff's progress payments requests, dubbed "payapps."

19.     During the course of the project, Plaintiff issued thirteen progress payment requests or "payapps." Beginning with payapp #4, Jacek withheld full payment, but kept assuring Plaintiff that he would make up the difference. As a result, for most of 2022 and all of 2023, Jacek was in arrears in his project payments in amounts ranging between $673,000 to $2,621,531.

20.     The only reason the project continued forward is that Ramindesign made up the funding short falls from its own pocket. It did so because Jacek kept professing his claimed earnest intention to pay all amounts due in full, promises which Ramindesign relayed to its contractors. In fact, Plaintiff's contractors agreed to continue performing despite non-payment or incomplete payment largely because of their established business relationships with Plaintiff and its vouching that payment would be forthcoming.

21.     Jacek's excuses for nonpayment ran the gamut from TD Bank was uncooperative

and too demanding of documentation to that he was involved in a business dispute with his father, requiring him to set up a new business for which he needed to use his funds earmarked for the project as capital. Defendant also tried to blame Plaintiff, claiming it failed to provide project information requested by TD Bank. Yet, this was untrue and Agreement did not impose a duty on Plaintiff to provide information to TD Bank. Rather, Plaintiff's only duty was to cooperate with the bank in the scheduling project site inspections. Nor were Plaintiff's payment obligations under the Agreement contingent upon TD Bank's willingness to fund the project.

22. Rather, it appears Defendant's untimely and insufficient payments were deliberate. Once project costs began increasing, Jacek apparently determined he would not pay any fees to Ramindesign on costs which exceeded $6.5 million. But determined to obtain Ramindesign's work product, Jacek kept his intentions to himself. Ultimately, he hoped to reap the benefits of Plaintiff's work without fully paying for it.

23. Despite Jacek's failure to pay its fees and the full costs, and based upon Jacek's representations of fidelity to the Agreement's terms including his payment obligations thereunder, Plaintiff continued performing. It proceeded with the work at breakneck speed, causing the project to be on the verge of substantial completion by the fall of 2023, months ahead of schedule.

24. By that time, the total amount of fees due Plaintiff was $2,437,440.75, but Jacek had paid Plaintiff only $1,420,658.66, leaving an unpaid balance of $1,016,782.09. Moreover, Jacek owed substantial unpaid costs.

25. On or about September 20, 2023, Plaintiff issued its payapp #13, which reflected additional cost increases and substantial open balances to many suppliers and contractors. Defendant balked at paying it in full, claiming he needed backup to verify the costs incurred and the monies expended and claiming that payapp #13 contradicted payapp #12.

26. Jacek further made a demand pursuant to Section 11 of the Agreement for all invoices, evidence of payments and other documentation of costs and the contracts with all suppliers and contractors. The sheer scope of the Jacek's document request required the production of pages and pages of records and extensive work by Plaintiff to gather these items. Ultimately, Ramindesign furnished the information to Jacek through a Dropbox link, as the Agreement provided. Defendant delayed reviewing the information while simultaneously falsely claiming that it had not been fully provided and that Plaintiff was using project monies to pay costs unconnected with the project.

27. Thereafter, Mr. Aleyasin and Jacek held a series of four in person meetings. The product of the dialogue was an understanding whereby Jacek would pay the remaining monies due. Yet, following these meetings and contrary to his representations, Jacek failed to make the promised payment.

28. As a result, Ramindesign lacked sufficient funds to pay many of the contractors and materials providers, and was unwilling to go further into the hole by continuing to front Jacek's costs owed out of its pocket. As a result, although project work continued, its pace and scope was reduced as Ramindesign had on hand only limited funds to pay for ongoing work.

29. Ramindesign informed Jacek that the project would be delayed because of his non-payment, but he still refused to pay. At about that time, Jacek apparently realized he could no longer coax and mislead Ramindesign into performing without full payment of project costs and Plaintiff's fees.

30. Without notice to Plaintiff, and during his negotiations with it, Jacek began interviewing potential replacements for Plaintiff. Defendant's intention was to use Ramindesign's ideas, plans, designs, work performed and the materials ordered, to complete the project without paying Plaintiff not only further fees but the fees earned to date and the costs

outstanding. In other words, Defendant sought to leave Plaintiff high and dry while retaining the benefits of its plans, designs, labor and materials.

31.     To that end, on December 7, 2023, Defendant entered the project site with armed guards, under the pretext of needing to safeguard materials stored at the job site. Yet, the site had been secured throughout the project by Plaintiff.

32.     Defendant's entry onto the property with his armed guards created an atmosphere of intimidation and threats. As a result, Plaintiff and his contractors left the job site. Defendant was advised that work could not continue in an atmosphere of intimidation. Thereafter, letters were sent by Defendant and his New Jersey attorney, Alan Winkler, Esq., dated December 7, 2023, falsely accusing Plaintiff of refusing to perform the work and withholding information, asserting that Plaintiff could not receive fees on any costs above $6.5 million and advising that the Agreement would be terminated in seven (7) days if Plaintiff failed to return to work and provide all project cost information within that period.

33.     Plaintiff refused to work without Defendant meeting his full contractual obligations and under duress and intimidation. Letters were dispatched to Defendant and his counsel from Plaintiff and its counsel explaining Plaintiff's position, its full provision of documentation and demanding Defendant pay the more than $1 million owed in unpaid fees and the unpaid costs.  Jacek ignored Plaintiff's letters.

34.     On December 15, 2023, Defendant sent written notice to Plaintiff terminating the Agreement.

35.     All conditions precedent to this action have been waived, satisfied or excused.

## COUNT I – BREACH OF CONTRACT -- JACEK

36.     Plaintiff adopts and realleges the allegations contained in paragraphs 1 through 35

above as paragraph 36.

37. On January 27, 2022, Plaintiff and Defendant entered the Agreement. The Agreement is a fully integrated contract which sets forth the parties' obligations. Among other things, the Agreement requires Defendant to pay Plaintiff a fee equal to twenty (20%) percent of all project costs up to $6.5 million and on all additional projects costs authorized by Defendant. The Agreement further provides for Plaintiff to bill Defendant for each progress payment, requiring Defendant to make his payment five (5) days after the issuance of a payment request. In making payments under the Agreement, Defendant agreed to rely upon the accuracy of the information which Plaintiff provided seeking payment.

38. Defendant agreed to pay all of the project costs as evidenced in payapps #1-12 and the corresponding fees earned by Plaintiff.

39. Defendant materially breached the Agreement by failing to timely and fully pay Plaintiff its fees in full as the Agreement requires.

40. As a direct and proximate result of Defendant's breaches of the Agreement, Plaintiff has been damaged. But for Defendant's breach, Plaintiff would not have sustained his losses.

WHEREFORE, Plaintiff Ramindesign, LLC demands judgment against Defendant Jacek Skarzynski for compensatory damages in accordance with the proof at trial, interest, costs, and such other and further relief as this Court deems just and proper.

### COUNT II – EQUITABLE ADJUSTMENT OF PLAINTIFF'S FEES -- JACEK

41. Plaintiff adopts and realleges the allegations contained in paragraphs 1 through 35 as paragraph 41.

42. This Count is pleaded in the alternative to Count I and is brought under Section 6.4 of the parties' Agreement.

43. Defendant claims that Plaintiff is not entitled to a fee on any project costs which exceed $6.5 million, asserting no change orders were signed by the parties as required by the Agreement.

44. Section 6.4 of the parties' Agreement expressly permits the equitable adjustment of Plaintiff's fee, notwithstanding the failure for change orders to be signed, if the failure to do so would result in substantial inequity.

45. Jacek knowingly and voluntarily received and acquiesced to receiving the benefit of Plaintiff's work and materials agreed to and authorized the cost increases and additional work which Plaintiff was required to undertake.

46. Irrespective of the absence of signed change orders, the failure to compensate Plaintiff for the substantial additional work performed by Plaintiff and the materials it ordered and the corresponding benefits retained and received by Jacek as a consequence would be substantially inequitable.

47. As a result, equity requires that Plaintiff receive a fee equal to twenty (20%) of all unpaid costs billed, minus fees already paid, an amount which totals $1,016,782.09.

WHEREFORE, Plaintiff Ramindesign, LLC demands judgment against Defendant Jacek Skarzynski for compensatory damages in accordance with the proof at trial, interest, costs, and such other and further relief this Court deems just and proper.

## COUNT III – UNJUST ENRICHMENT -- JACEK

48. Plaintiff adopts and realleges the allegations contained in paragraphs 1 through 35 as paragraph 48.

49. This claim is brought in the alternative to Counts I and II.

50. At all times material, Jacek acquiesced in the performance of Plaintiff's work, including services, materials and labor, at the Property.

51. As co-owner of the Property, Jacek benefited from the work, including services, labor, materials and labor, which Plaintiff performed.

52. Jacek voluntarily accepted and retained the benefit which Plaintiff conferred.

53. Jacek appreciated the benefit which Plaintiff conferred upon him.

54. The circumstances are such that it would be inequitable for Jacek to accept and retain the benefit without paying the value thereof to Plaintiff.

55. Plaintiff lacks an adequate remedy at law.

WHEREFORE, Plaintiff Ramindesign, LLC demands judgment against Defendant Jacek Skarzynski for compensatory damages in accordance with the proof at trial, interest, costs, and such other and further relief this Court deems just and proper.

## COUNT IV – QUANTUM MERUIT – JACEK

56.  Plaintiff adopts and realleges the allegations contained in paragraphs 1 through 35 as paragraph 56.

57.  This claim is brought in the alternative to Counts I and II.

58. At all times material, Jacek, as co-owner of the Property, acquiesced in Plaintiff's performance of labor, materials and services at the Property.

59. Jacek was aware that Plaintiff expected to be compensated for its performance of labor, materials and services at the Property.

60. Plaintiff has not been paid the reasonable value of the services it rendered.

WHEREFORE, Plaintiff Ramindesign, LLC demands judgment against Defendant Jacek Skarzynski for compensatory damages in accordance with the proof at trial, interest, costs, and such other and further relief this Court deems just and proper.

## COUNT V – UNJUST ENRICHMENT -- OLGA

61.  Plaintiff adopts and realleges the allegations contained in paragraphs 1 through 35 as

paragraph 61.

62. This claim is brought in the event that Plaintiff lacks a valid legal remedy in this action against Jacek.

63. At all times material, Olga had full knowledge of the services which Plaintiff performed at the Property and acquiesced in the performance of such work.

64. By virtue of the services Plaintiff provided, it conferred a substantial benefit upon Olga as co-owner of the Property.

65. Olga benefited from the services Plaintiff performed.

66. Olga voluntarily accepted and retained the benefit which Plaintiff conferred.

67. Olga appreciated the benefit which Plaintiff conferred.

68. The circumstances are such that it would be inequitable for the Olga to accept and retain the benefit without paying the value thereof to Plaintiff.

69. Plaintiff lacks an adequate remedy at law.

WHEREFORE, Plaintiff Ramindesign, LLC demands judgment against Defendant Olga Skarzynski for compensatory damages in accordance with the proof at trial, interest, costs, and such other and further relief this Court deems just and proper.

## COUNT VI – QUANTUM MERUIT -- OLGA

70. Plaintiff adopts and realleges the allegations contained in paragraphs 1 through 35 as paragraph 70.

71. This claim is brought in the event that Plaintiff lacks a valid legal remedy in this action against Jacek.

72. Olga, as co-owner of the Property, acquiesced in Plaintiff's performance of labor, materials and services at the Property.

73. Olga was aware that Plaintiff expected to be compensated for its performance of

labor, materials and services at the Property.

74. Plaintiff has not been paid the reasonable value of the labor, services and materials it furnished.

WHEREFORE, Plaintiff Ramindesign, LLC demands judgment against Defendant Olga Skarzynski for compensatory damages in accordance with the proof at trial, interest, costs, and such other and further relief this Court deems just and proper.

Dated this 21st day of December, 2023.

                              STEVEN F. SAMILOW, P. A.
                              1792 Bell Tower Lane
                              Weston, FL 33326
                              Tel: (954) 315-3612 / Fax: (954) 252-4502

                              By:     *s/Steven F. Samilow*
                                          Steven F. Samilow
                                          Florida Bar No.: 769142
                                          Email: stevens@samilowlaw.com

*Counsel for Plaintiff Ramindesign, LLC*