EXHIBIT "1"

*AIA-102 Agreement  Between Owner and Contractor  -- Standard Form of Agreement Between Owner and Contractor where the basis of payment is the Cost of the Work Plus a Fee with a Guaranteed Maximum Price (As Modified by the Parties)*

**AGREEMENT** made as of the 27th day    of January  in the year 2022

**BETWEEN** Jacek Skarzynski
*hereafter "Owner" who owns the following real property:*

Folio#: 01-3232-001-0200
Property address: 1413 N. Venetian Way Miami, FL 33139-1141

and*)*

Ramindesign, LLC
1410 20th Street,
Suite 203
Miami Beach, FL 33139
acting as "Spec Developer" and called "Contractor" for the following Project:
*(Name, location and detailed description)*

1413 N. Venetian Way
Miami, FL 33139
New construction of a two story waterfront Spec. home

The Architect:
*(Name, legal status, address and other information)*

Owner and Contractor agree as follows.

[The remainder of this page intentionally is left blank].

**AIA Document A102™ – 2017.** Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997, 2007 and 2017 by The American Institute of Architects. All rights reserved. The "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks and may not be used without permission. This draft was produced by AIA software at 12:27:55 ET on 03/16/2021 under Order No.3216830840 which expires on 02/27/2022, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail copyright@aia.org.
User Notes:                                                                                    (1834447687)

1

TABLE OF ARTICLES

1       THE CONTRACT DOCUMENTS

2       THE WORK OF THIS CONTRACT

3       RELATIONSHIP OF THE PARTIES

4       DATE OF COMMENCEMENT AND SUBSTANTIAL COMPLETION

5       CONTRACT SUM

6       CHANGES IN THE WORK

7       COSTS TO BE REIMBURSED

8       COSTS NOT TO BE REIMBURSED

9       DISCOUNTS, REBATES AND REFUNDS

10      SUBCONTRACTS AND OTHER AGREEMENTS

11      ACCOUNTING RECORDS

12      PAYMENTS

13      DISPUTE RESOLUTION

14      TERMINATION OR SUSPENSION

15      MISCELLANEOUS PROVISIONS

16      ENUMERATION OF CONTRACT DOCUMENTS

EXHIBIT A      INSURANCE

EXHIBIT B      DESIGN PARAMETERS AND GOALS AND ADDITIONAL TERMS AND OWNER ACKNOWLEDGMENTS

ARTICLE 1   THE CONTRACT DOCUMENTS
The Contract Documents consist of this Agreement and all terms set forth herein and any addenda affixed hereto.

ARTICLE 2   THE WORK OF THIS CONTRACT
Contractor, acting as spec developer, shall fully execute the Work in accordance with its design plans whose creation and any modification thereof shall be Contractor's sole responsibility. Pursuant to this Contract, Contractor will design and build a residential two-story single family "spec" home whose design will be inspired by Contractor's design of the home located at 10 W. San Marino Drive, Miami Beach, FL 33139 which shall act as a baseline for this project. Contractor reserves the right to vary from the design of the 10 W. San Marino Drive property where necessary to achieve Contractor's and Owner's construction goals as needed for a spec project. Notwithstanding any actions taken by one or more of the parties hereto, including placing and binding commercial liability or other commercial insurance for this project and the payment of premiums for such coverage, as required under Exhibit "A" hereto, this Contract shall be construed under law solely and exclusively as an agreement for the development of residential real estate, and Owner and Contractor expressly, knowingly and voluntarily waive the right to contend otherwise. The foregoing construction of the Contract is for the benefit of the parties and Contractor's subcontractors, agents and employees.

AIA Document A102™ – 2017. Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997, 2007 and 2017 by The American Institute of Architects. All rights reserved. The "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks and may not be used without permission. This draft was produced by AIA software at 12:27:55 ET on 03/16/2021 under Order No.3216830840 which expires on 02/27/2022, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail copyright@aia.org.
User Notes:                                                                                                    (1834447687)

## ARTICLE 3   RELATIONSHIP OF THE PARTIES

The Contractor accepts the relationship of trust and confidence established by this Agreement and covenants with the Owner and exercise the Contractor's skill and judgment in furthering the interests of the Owner; to furnish efficient business administration and supervision; to furnish at all times an adequate supply of workers and materials; and to perform the Work in an expeditious and economical manner consistent with the Owner's interests. The Owner agrees to furnish and approve, in a timely manner, information required by the Contractor and to make payments to theContractor in accordance with the requirements of the Contract Documents.

## ARTICLE 4   DATE OF COMMENCEMENT AND SUBSTANTIAL COMPLETION

§ **4.1** The date of commencement of the Work shall be:
*(Check one of the following boxes.)*

[02/15/2022]         The date of this Agreement.

[02/15/2022]         A date set forth in a notice to proceed issued by the Owner.

[ « » ]   Established as follows:
*(Insert a date or a means to determine the date of commencement of the Work.)*

02/15/2022

The parties acknowledge that performance under this Contract began retroactive to May 15, 2021.

If a date of commencement of the Work is not selected, then the date of commencement shall be the date of this Agreement.

§ **4.2** The Contract Time shall be measured from the date of commencement of the Work.

### § 4.3 Substantial Completion

§ **4.3.1** Subject to adjustments of the Contract Time as provided in the Contract Documents, the Contractor shall achieve Substantial Completion of the entire Work:
*(Check one of the following boxes and complete the necessary information.)*

[ X ]     Not later than November 16, 2023 calendar days from the date of commencement of the Work.

[ « » ]   By the following date: « »

§ **4.3.2** Subject to adjustments of the Contract Time as provided in the Contract Documents, if portions of the Work are to be completed prior to Substantial Completion of the entire Work, the Contractor shall achieve Substantial Completion of such portions by the following dates:

| Portion of Work | Substantial Completion Date |
|---|---|
| All major construction such as concrete pouring, stucco application, exterior and interior painting completed, roof completed, landscaping completed, windows & doors installed, balcony glass installed, all exterior railings installed, pool completed and all exterior equipment installed and 90% of all interior finishes completed. | November 16, 2023; FINAL COMPLETION DATE: February 28, 2024. |

§ **4.3.3** If the Contractor fails to achieve Substantial Completion as provided in this Section 4.3, liquidated damages, if any, shall be assessed as set forth in Section 5.1.6.

**AIA Document A102™ – 2017.** Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997, 2007 and 2017 by The American Institute of Architects. All rights reserved. The "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks and may not be used without permission. This draft was produced by AIA software at 12:27:55 ET on 03/16/2021 under Order No.3216830840 which expires on 02/27/2022, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail copyright@aia.org.
User Notes:                                                                                   (1834447687)

## ARTICLE 5   CONTRACT SUM

§ **5.1** The Owner shall pay the Contractor the Contract Sum in current funds for the Contractor's performance of the Contract. The Contract Sum is the Cost of the Work as defined in Article 7 plus the Contractor's Fee.

§ **5.1.1** The Contractor's Fee:
*(State a lump sum, percentage of Cost of the Work, or other provision for determining the Contractor's Fee.)*

Twenty (20%) of construction costs. The fee shall be paid to Contractor by Owner from the Progress Payment Requests submitted to him by Contractor.

**5.1.2** The method of adjustment of the Contractor's Fee for changes in the Work: Contractor will submit field condition change or design change order; The authority to do so will lie solely with Contractor and will be based upon what Contractor believes will be appropriate for and beneficial to the project

Percentage (%) of construction costs –No Owner approval is required for cost changes that are less than $25,000, but Contractor to inform Owner of such changes. For cost changes that exceed $25,000, Contractor and Owner shall mutually AGREE.

§ **5.1.3** Limitations, if any, on a Subcontractors' overhead and profit for increases in the cost of its portion of the Work:

« »  N/A

§ **5.1.4** Rental rates for Contractor-owned equipment shall not exceed « » percent ( « » %) of the standard rental rate paid at the place of the Project.

§ **5.1.5** Unit prices, if any:
*(Identify the item and state the unit price and quantity limitations, if any, to which the unit price will be applicable.)*

| Item | Units and Limitations | Price Per Unit ($0.00) |
|---|---|---|
| N/A | | |

§ **5.1.6** Liquidated damages, if any:
*(Insert terms and conditions for liquidated damages, if any.)*

No penalty for not meeting final completion date of February 28, 2024. Owner and Contractor will agree to a new final completion date.

§ **5.1.7** Other:
*(Insert provisions for bonus, cost savings or other incentives, if any, that might result in a change to the Contract Sum.)*
N/A

### § 5.2 Guaranteed Maximum Price
§ **5.2.1** The Contract Sum is guaranteed by the Contractor not to exceed $ 6,500,000.00, subject to additions and deductions by Change Order as provided in the Contract Documents. This maximum sum is referred to in the Contract Documents as the Guaranteed Maximum Price. For Costs which would cause the Guaranteed Maximum Price to be exceeded, owner and Contractor will work together to come to an agreement as to change orders on any number exceeding the Guaranteed Maximum Price.

### § 5.2.2 Alternates
§ **5.2.2.1** Alternates, if any, included in the Guaranteed Maximum Price:

| Item | Price |
|---|---|
| N/A | N/A |

**AIA Document A102™ – 2017.** Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997, 2007 and 2017 by The American Institute of Architects. All rights reserved. The "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks and may not be used without permission. This draft was produced by AIA software at 12:27:55 ET on 03/16/2021 under Order No.3216830840 which expires on 02/27/2022, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail copyright@aia.org.
User Notes:                                                                                                    (1834447687)

**§ 5.2.2.2** Subject to the conditions noted below, the following alternates may be accepted by the Owner following execution of this Agreement. Upon acceptance, the Owner shall issue a Modification to this Agreement. *(Insert below each alternate and the conditions that must be met for the Owner to accept the alternate.)*

| Item | Price | Conditions for Acceptance |
|------|-------|---------------------------|
| N/A | | |

**§ 5.2.3** Allowances, if any, included in the Guaranteed Maximum Price:
*(Identify each allowance.)*

| Item | Price |
|------|-------|
| N/A | |

**§ 5.2.4** Assumptions, if any, upon which the Guaranteed Maximum Price is based:
*(Identify each assumption.)*

« »

**§ 5.2.5** To the extent that the Contract Documents are anticipated to require further development, the Guaranteed Maximum Price includes the costs attributable to such further development consistent with the Contract Documents and reasonably inferable therefrom. Such further development does not include changes in scope, systems, kinds and quality of materials, finishes or equipment, all of which, if required, shall be incorporated by Change Order.

**§ 5.2.6** Should material costs increase because of the supply shortages and inflation caused by the Covid-19 pandemic, the parties acknowledge and agree that the Guaranteed Maximum Price will be adjusted up to a maximum of $500,000.00 to account for such increases in the cost of materials. Should such increases in the cost of materials exceed the total sum of $500,000.00, the parties will discuss such increases to come to a mutual agreement. Contractor will provide Owner with documentation regarding any claim for such increases.

**ARTICLE 6   CHANGES IN THE WORK**
**§ 6.1** Owner and Contractor will come to an agreement on any changes. Changes which affect Costs will be calculated based on Articles 7, 8 and 9 below.

**§ 6.2** N/A

**§ 6.3** N/A

**§ 6.4** If no specific provision is made in Article 5 for adjustment of the Contractor's Fee in the case of changes in the Work, or if the extent of such changes is such, in the aggregate, that application of the adjustment provisions of Article 5 will cause substantial inequity to the Owner or Contractor, the Contractor's Fee shall be equitably adjusted on the same basis that was used to establish the Fee for the original Work, and the Guaranteed Maximum Price shall be adjusted accordingly.

**ARTICLE 7   COSTS TO BE REIMBURSED**
**§ 7.1 Cost of the Work**
**§ 7.1.1** The term Cost of the Work shall mean costs necessarily incurred by the Contractor in the proper performance of the Work. The Cost of the Work shall include only the items set forth in this Article 7.

**§ 7.1.2** All major costs (over $400,000) such as for kitchen, HVAC, Windows, Vanities and closets, shall be disclosed to Owner in writing before Contractor's submissions for payment for such items. If Owner wishes to suggest a change to a particular cost item (which is over $400,000), he must advise Contractor in writing within 3 days of receiving notice of the cost. Contractor and Owner shall mutually agree on a substitution in writing.

**§ 7.1.3** To the extent reasonably possible. costs shall be at rates not higher than the standard paid at the place of the Project.

**§ 7.2 Labor Costs**

AIA Document A102™ – 2017. Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997, 2007 and 2017 by The American Institute of Architects. All rights reserved. The "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks and may not be used without permission. This draft was produced by AIA software at 12:27:55 ET on 03/16/2021 under Order No.3216830840 which expires on 02/27/2022, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail copyright@aia.org.
User Notes:                                                                                              (1834447687)

5

**§ 7.2.1** Wages or salaries of construction workers directly employed by the Contractor to perform the construction of the Work at the site or at off-site workshops.

**§ 7.2.2** Wages or salaries of the Contractor's supervisory and administrative personnel when stationed at the site and performing Work..

**§ 7.2.2.1** Wages or salaries of the Contractor's supervisory and administrative personnel when performing Work and stationed at a location other than the site, but only for that portion of time required for the Work, and limited to the personnel and activities listed below:
*(Identify the personnel, type of activity and, if applicable, any agreed upon percentage of time to be devoted to the Work.)*

« »

**§ 7.2.3** Wages or salaries of the Contractor's supervisory or administrative personnel engaged at factories, workshops or while traveling, in expediting the production or transportation of materials or equipment required for the Work, but only for that portion of their time required for the Work.

**§ 7.2.4** Costs paid or incurred by the Contractor, as required by law or collective bargaining agreements, for taxes, insurance, contributions, assessments, and benefits and, for personnel not covered by collective bargaining agreements, customary benefits such as sick leave, medical and health benefits, holidays, vacations and pensions, provided such costs are based on wages and salaries included in the Cost of the Work under Sections 7.2.1 through 7.2.3.

**§ 7.2.5** N/A.

**§ 7.3 Subcontract Costs**
Payments made by the Contractor to Subcontractors in accordance with the requirements of the subcontracts and this Agreement.

**§ 7.4 Costs of Materials and Equipment Incorporated in the Completed Construction**
**§ 7.4.1** Costs, including transportation and storage at the site, of materials and equipment incorporated, or to be incorporated, in the completed construction.

**§ 7.4.2** Costs of materials described in the preceding Section 7.4.1 in excess of those actually installed to allow for reasonable waste and spoilage.

**§ 7.5 Costs of Other Materials and Equipment, Temporary Facilities and Related Items**
**§ 7.5.1** Costs of transportation, storage, installation, dismantling, maintenance, and removal of materials, supplies, temporary facilities, machinery, equipment and hand tools not customarily owned by construction workers that are provided by the Contractor at the site and fully consumed in the performance of the Work. Costs of materials, supplies, temporary facilities, machinery, equipment, and tools, that are not fully consumed, shall be based on the cost or value of the item at the time it is first used on the Project site less the value of the item when it is no longer used at the Project site. Costs for items not fully consumed by the Contractor shall mean fair market value.

**§ 7.5.2** Rental charges for temporary facilities, machinery, equipment, and hand tools not customarily owned by construction workers that are provided by the Contractor at the site, and the costs of transportation, installation, dismantling, minor repairs, and removal of such temporary facilities, machinery, equipment, and hand tools. Rates and quantities of equipment owned by the Contractor, or a related party as defined in Section 7.8. The total rental cost of any such equipment may not exceed the purchase price of any comparable item.

**§ 7.5.3** Costs of removal of debris and asbestos from the site of the Work and its proper and legal disposal.

**§ 7.5.4** Costs of the Contractor's site office, including general office equipment and supplies.

**§ 7.5.5** Costs of materials and equipment suitably stored off.

**§ 7.6 Miscellaneous Costs**

AIA Document A102™ – 2017. Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997, 2007 and 2017 by The American Institute of Architects. All rights reserved. The "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks and may not be used without permission. This draft was produced by AIA software at 12:27:55 ET on 03/16/2021 under Order No.3216830840 which expires on 02/27/2022, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail copyright@aia.org.
User Notes:                                                                                          (1834447687)

**§ 7.6.1** Premiums for that portion of insurance and bonds required by the Contract Documents that can be directly attributed to this Contract.

**§ 7.6.1.1** Costs for self-insurance, for either full or partial amounts of the coverages required by the Contract Documents.

**§ 7.6.1.2** Costs for insurance through a captive insurer owned or controlled by the Contractor.

**§ 7.6.2** Sales, use, or similar taxes, imposed by a governmental authority, that are related to the Work and for which the Contractor is liable.

**§ 7.6.3** Fees and assessments for the building permit, and for other permits, licenses, and inspections, for which the Contractor is required by the Contract Documents to pay.

**§ 7.6.4** N/A

**§ 7.6.5** Royalties and license fees paid for the use of a particular design, process, or product, required by the Contract Documents.

**§ 7.6.5.1** The cost of defending suits or claims for infringement of patent rights arising from requirements of the Contract Documents, payments made in accordance with legal judgments against the Contractor resulting from such suits or claims, and payments of settlements, unless the Contractor had reason to believe that the required design, process or product was an infringement of a copyright or a patent, and the Contractor failed to promptly furnish such information to the Architect. The costs of legal defenses, judgments, and settlements, shall not be included in the Cost of the Work used to calculate the Contractor's Fee or subject to the Guaranteed Maximum Price.

**§ 7.6.6** Costs for communications services, electronic equipment, and software, directly related to the Work and located at the site.

**§ 7.6.7** Costs of document reproductions and delivery charges.

**§ 7.6.8** Deposits lost for causes other than the Contractor's negligence or failure to fulfill a specific responsibility in the Contract Documents.

**§ 7.6.9** Legal, mediation and arbitration costs, including attorneys' fees, other than those arising from disputes between the Owner and Contractor, reasonably incurred by the Contractor after the execution of this Agreement in the performance of the Work.

**§ 7.6.10** Expenses incurred in accordance with the Contractor's standard written personnel policy for relocation and temporary living allowances of the Contractor's personnel required for the Work.

**§ 7.6.11** That portion of the reasonable expenses of the Contractor's supervisory or administrative personnel incurred while traveling in discharge of duties connected with the Work.

**§ 7.7 Other Costs and Emergencies**
**§ 7.7.1** Other costs incurred in the performance of the Work require approval of or Owner's knowledge of same through written notice provided by Contractor.

**§ 7.7.2** Costs incurred in taking action to prevent threatened damage, injury, or loss, in case of an emergency affecting the safety of persons and property.

**§ 7.7.3** Costs of repairing or correcting damaged or nonconforming Work executed by the Contractor, Subcontractors, or suppliers, provided that such damaged or nonconforming Work was not caused by the negligence of, or failure to fulfill a specific responsibility by, the Contractor, and only to the extent that the cost of repair or correction is not recovered by the Contractor from insurance, sureties, Subcontractors, suppliers, or others.

**§ 7.8 Related Party Transactions**
**§ 7.8.1** For purposes of this Section 7.8, the term "related party" shall mean (1) a parent, subsidiary, affiliate, or other

AIA Document A102™ – 2017. Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997, 2007 and 2017 by The American Institute of Architects. All rights reserved. The "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks and may not be used without permission. This draft was produced by AIA software at 12:27:55 ET on 03/16/2021 under Order No.3216830840 which expires on 02/27/2022, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail copyright@aia.org.
User Notes: (1834447687)

entity having common ownership of, or sharing common management with, the Contractor; (2) any entity in which any stockholder in, or management employee of, the Contractor holds an equity interest in excess of ten percent in the aggregate; (3) any entity which has the right to control the business or affairs of the Contractor; or (4) any person, or any member of the immediate family of any person, who has the right to control the business or affairs of the Contractor.

§ **7.8.2** N/A

### ARTICLE 8   COSTS NOT TO BE REIMBURSED
§ **8.1** The Cost of the Work shall not include the items listed below:
    1.   Salaries and other compensation of the Contractor's personnel stationed at the Contractor's principal office or offices other than the site office, except as specifically provided in Section 7.2, or as may be provided in Article 15;
    2.   Bonuses, profit sharing, incentive compensation, and any other discretionary payments, paid to anyone hired by the Contractor or paid to any Subcontractor or vendor;
    3. Expenses of the Contractor's principal office and offices other than the site office;
    4.   Overhead and general expenses, except as may be expressly included in Article 7;
    5.   The Contractor's capital expenses, including interest on the Contractor's capital employed for the Work;
    6.   Except as provided in Section 7.7.3 of this Agreement, costs due to the negligence of, or failure to fulfill a specific responsibility of the Contract by, the Contractor, Subcontractors, and suppliers, or anyone directly or indirectly employed by any of them or for whose acts any of them may be liable;
    7.   Any cost not specifically and expressly described in Article 7; and
    8.   Costs, other than costs included in Change Orders approved by the Owner, that would cause the Guaranteed Maximum Price to be exceeded.

### ARTICLE 9   DISCOUNTS, REBATES AND REFUNDS
§ **9.1** Cash discounts obtained on payments made by the Contractor shall accrue to the Owner if (1) before making the payment, the Contractor included the amount to be paid, less such discount, in an Application for Payment and received payment from the Owner, or (2) the Owner has deposited funds with the Contractor with which to make payments; otherwise, cash discounts shall accrue to the Contractor. Trade discounts, rebates, refunds, and amounts received from sales of surplus materials and equipment shall accrue to the Owner, and the Contractor shall make provisions so that they can be obtained.

§ **9.2** Amounts that accrue to the Owner in accordance with the provisions of Section 9.1 shall be credited to the Owner as a deduction from the Cost of the Work.

### ARTICLE 10   SUBCONTRACTS AND OTHER AGREEMENTS
§ **10.1** Those portions of the Work that the Contractor does not customarily perform with the Contractor's own personnel shall be performed under subcontracts or other appropriate agreements with the Contractor. The Contractor shall not be required to contract with anyone to whom the Contractor has reasonable objection.

§ **10.1.1** When a specific subcontractor or supplier (1) is recommended to the Owner by the Contractor; (2) is qualified to perform that portion of the Work; and (3) has submitted a bid that conforms to the requirements of the Contract Documents without reservations or exceptions, but the Owner objects to the subcontractors or supplier, then the Contractor may require that a Change Order be issued to adjust the Guaranteed Maximum Price by the difference between the bid of the person or entity recommended to the Owner by the Contractor and the amount of the subcontract or other agreement actually signed with another person or entity designated by the Contractor any change order required to better market the property will be discussed and mutually agreed.

§ **10.2** N/A

### ARTICLE 11   ACCOUNTING RECORDS
The Contractor shall keep full records and accounts related to the Cost of the Work, and exercise such controls, as may be necessary for proper financial management under this Contract and to substantiate all costs incurred. The Owner and the Owner's auditors shall, during regular business hours and upon reasonable notice, be afforded access to, and shall be permitted to audit and copy via Dropbox folders, the Contractor's records and accounts, including

AIA Document A102™ – 2017. Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997, 2007 and 2017 by The American Institute of Architects. All rights reserved. The "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks and may not be used without permission. This draft was produced by AIA software at 12:27:55 ET on 03/16/2021 under Order No.3216830840 which expires on 02/27/2022, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail copyright@aia.org.
User Notes:                                                                                                      (1834447687)

complete documentation supporting accounting entries, books, job cost reports, drawings, receipts, subcontracts, Subcontractors' proposals, Subcontractors' invoices, purchase orders, vouchers. The Contractor shall preserve these records for a period of three years after final payment, or for such longer period as may be required by law.

## ARTICLE 12   PAYMENTS

**§ 12.1 Progress Payments –** Owner has paid Contractor the sum of $650,000, as part of the Price of this Contract, and which will be applied to progress payment requests submitted by Contractor until their cumulative amount exceeds $850,000. The remainder of payment due Contractor hereunder shall be progress payments made upon submission of requests for payment by Contractor.

**§ 12.1.1** Based upon Applications for Payment submitted by the Contractor, , the Owner shall make progress payments on account of the Contract Sum, to the Contractor, as provided below and elsewhere in the ContractDocuments.

**§ 12.1.2** The period covered by each Application for Payment shall be one calendar month ending on the last day of the month, or as follows:
Once per month and every month during the contract term unless it is necessary in the interest of time to seek additional funding to advance project.

**§ 12.1.3** Provided that an Application for Payment is received not later than the 15th day of a month, the Owner shall make payment of the amount certified  to the  Contractor not later than the  30th  day  of the month.  Payment must be made in 5 days of submittal.
*(Federal, state or local laws may require payment within a certain period of time.)*

**§ 12.1.4** With each Application for Payment, the Contractor shall submit ONE release of lien for the amount spent. Application for Payment, less that portion of the progress payments attributable to the Contractor's Fee.

**§ 12.1.5** Each Application for Payment shall be based on the most progress payment request and will include deposits required to order long lead items such kitchens, baths, vanities, windows, generators, and other required items for luxury water front finishes. The schedule of values shall include any Change Order and Contractor's Fee.

**§ 12.1.5.1** Contractor Progress payment requests will be made using forms AIA Document G702/G703 as a basis for Contractor's Applications for Payment.

**§ 12.1.5.2** The allocation of the Guaranteed Maximum Price under this Section 12.1.5 shall not constitute a separate guaranteed maximum price for the Cost of the Work of each individual line item in the schedule of values.

**§ 12.1.5.3** When the Contractor allocates costs from a contingency to another line item in the schedule of values, the Contractor shall submit supporting documentation in the progress payment.

**§ 12.1.6** Applications for Payment shall show the estimated percentage of total completion of the Work as of the end of the period covered by the Application for Payment. The percentage of completion shall be the lesser of (1) the percentage of that portion of the Work which has actually been completed for which the Contractor has made payment or intends to make payment prior to the next Application for Payment, by (b) the share of the Guaranteed Maximum Price allocated to that portion of the Work in the schedule of values.

**§ 12.1.7** The amount of each progress payment shall be computed as follows:

**§ 12.1.7.1 N/A**

**§ 12.1.7.2 N/A**

**§ 12.1.8 Retainage**
**§ 12.1.8.1** For each progress payment made to Contractor before the Substantial Completion of the Work, the Owner may withhold the following amount, as retainage, from the payment otherwise due: 5%. This retainage shall be paid to Contractor by Owner upon completion of the related trade such as piling, shell, concrete, steel etc..
*(Insert a percentage or amount to be withheld as retainage from each Application for Payment. The amount of*

**AIA Document A102™ – 2017.** Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997, 2007 and 2017 by The American Institute of Architects. All rights reserved. The "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks and may not be used without permission. This draft was produced by AIA software at 12:27:55 ET on 03/16/2021 under Order No.3216830840 which expires on 02/27/2022, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail copyright@aia.org.
User Notes:                                                                                    (1834447687)

*retainage may be limited by governing law.)*

**§ 12.1.8.1.1** The following items are not subject to retainage: N/A.
**§ 12.1.8.2** Reduction or limitation of retainage, if any, shall be as follows:
*(If the retainage established in Section 12.1.8.1 is to be modified prior to Substantial Completion of the entire Work, insert provisions for such modification.)*

N/A
**§ 12.1.8.3** Except as set forth in this Section 12.1.8.3, upon Substantial Completion of the Work, the Contractor may submit an Application for Payment that includes the retainage withheld from prior Applications for Payment pursuant to this Section 12.1.8. The Application for Payment submitted at Substantial Completion shall not include retainage as follows:
*(Insert any other conditions for release of retainage, such as upon completion of the Owner's audit and reconciliation, upon Substantial Completion.)*

N/A
**§ 12.1.9** If final completion of the Work is materially delayed through no fault of the Contractor, the Owner shall pay the Contractor any additional amounts in accordance with this Agreement.

**§ 12.1.10** The Contractor shall make advance payments to suppliers for materials or equipment which have not been delivered and suitably stored at the site such as long lead items.

**§ 12.1.11** The Contractor shall review and approve payments to Subcontractors, and the percentage of retainage held on Subcontracts, and the Contractor shall execute subcontracts in accordance with those agreements.

**§ 12.1.12** In acting upon the Contractor's Applications for Payment the Owner shall rely on the accuracy and completeness of the information furnished by the Contractor.

**§ 12.2 Final Payment**
**§ 12.2.1** Final payment, constituting the entire unpaid balance of the Contract Sum, shall be made by the Owner to the Contractor when
      1.  the Contractor has fully performed the Contract, except for the Contractor's responsibility to correct Work, and to satisfy other requirements, if any, which extend beyond final payment;
      2.  the Contractor has submitted a final accounting for the Cost of the Work and a final Application for Payment; and
      3.  a final Certificate for Payment has been issued by the City of Miami in accordance with Section 12.2.2.

**§ 12.2.2** Within fifteen (15) working days of the Owner's receipt of the Contractor's final accounting for the Cost of the Work, the Owner can conduct an audit of the Cost of the work.

**§ 12.2.2.1** If Owner conducts an audit of the Cost of the Work, Owner shall, within fifteen (15) working days after completion of the audit, submit a written report based upon the auditors' findings.

**§ 12.2.2.2 N/A**

**§ 12.2.2.3 N/A**

**§ 12.2.3** The Owner's final payment to the Contractor shall be made no later than 15 days after the issuance of the final Certificate for Payment, or as follows:

《 》

**§ 12.2.4** If, subsequent to final payment, and at the Owner's request, the Contractor incurs costs, described in Article 7 and not excluded by Article 8, to correct defective or nonconforming Work, the Owner shall reimburse the Contractor for such costs, and the Contractor's Fee applicable thereto, on the same basis as if such costs had been incurred prior to final payment, but not in excess of the Guaranteed Maximum Price. If adjustments to the Contract Sum are provided for in Section 5.1.7, the amount of those adjustments shall be recalculated, taking into account any reimbursements

AIA Document A102™ – 2017. Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997, 2007 and 2017 by The American Institute of Architects. All rights reserved. The "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks and may not be used without permission. This draft was produced by AIA software at 12:27:55 ET on 03/16/2021 under Order No.3216830840 which expires on 02/27/2022, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail copyright@aia.org.
User Notes:                                                                                                    (1834447687)

purpose of fully vesting in the Owner the rights and benefits of the Contractor under such subcontracts or purchase orders.

**§ 14.1.3 Termination by the Owner for Convenience**
If the Owner terminates the Contract for convenience, then the Owner shall pay the Contractor a termination fee as follows:
*(Insert the amount of or method for determining the fee, if any, payable to the Contractor following a termination for the Owner's convenience.)*

**§ 14.2 Suspension**
The Work may be suspended by the Owner; in such case, the Guaranteed Maximum Price and Contract Time shall be increased, except that the term "profit" shall be understood to mean the Contractor's Fee as described in Article 5 and Section 6.4 of this Agreement.

**ARTICLE 15   MISCELLANEOUS PROVISIONS**
**§ 15.1** N/A

**§ 15.2** The Owner's representative:
*(Name, address, email address and other information)*

Jacek Skarzynski
jaceks@adamseuro.com
« »
« »
« »
« »

**§ 15.3** The Contractor's representative:
*(Name, address, email address and other information)*

Ramin Aleyasin
Ramindesign LLC
designoffice@ramindesigns.com
726west@726west.com
« »
« »
« »
« »

**§ 15.4** Neither the Owner's nor the Contractor's representative shall be changed without ten days' prior notice to the other party.

**§ 15.5 Insurance**
**§ 15.5.1** Contractor shall purchase, at Owners' sole expense, commercial liability and such other Insurance as provided in Exhibit "A"  which is described below in Article 16.

**§ 15.5.2**

**§ 15.6** Notice in electronic format may be given via email to the parties hereunder.
« »

**§ 15.7** Other provisions: Delay may be caused by suppliers in Europe, shipping, and or COVID-19 related delays.

« »

**ARTICLE 16   ENUMERATION OF CONTRACT DOCUMENTS**
**§ 16.1** This Agreement is comprised of the following documents:
1. This Agreement Between Owner and Contractor.

**AIA Document A102™ – 2017.** Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997, 2007 and 2017 by The American Institute of Architects. All rights reserved. The "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks and may not be used without permission. This draft was produced by AIA software at 12:27:55 ET on 03/16/2021 under Order No.3216830840 which expires on 02/27/2022, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail copyright@aia.org.
**User Notes:**                                                                                                              (1834447687)

2.  Exhibit A setting forth all insurance coverage that has been obtained for this project or which will be obtained. Insurance coverage will remain in place until the earlier of : (1) the final completion date of February 28, 2024 or (2) the date that an occupancy permit is issued by the governmental authorities.
3.  Exhibit B which is described below.

« »

.5    Drawings

| Number | Title | Date |
|--------|-------|------|
| N/A    |       |      |

.6    Specifications

| Section | Title | Date | Pages |
|---------|-------|------|-------|
| N/A     |       |      |       |

.7    Addenda, if any:

| Number | Date | Pages |
|--------|------|-------|
| N/A    |      |       |

Portions of Addenda relating to bidding or proposal requirements are not part of the Contract Documents unless the bidding or proposal requirements are also enumerated in this Article 16.

.8    Other Exhibits:
*(Check all boxes that apply.)*

[ « » ]  AIA Document E204™–2017, Sustainable Projects Exhibit, dated as indicated below:
         *(Insert the date of the E204-2017 incorporated into this Agreement.)*

         « »

[ « » ]  The Sustainability Plan:

| Title | Date | Pages |
|-------|------|-------|
|       |      |       |

[]       Supplementary and other Conditions of the Contract:

| Document | Title | Date | Pages |
|----------|-------|------|-------|
|          |       |      |       |

9.    Other documents, if any, listed below:

See Exhibit "B" which is adopted and incorporated into the Contract.

This Agreement entered into as of the day and year first written above.

Jacek Skarzynski                                            Ramindesign, LLC

_____                          by:  *ramin aleyasin*
OWNER *(Signature)*                                  CONTRACTOR *(Signature)*          **RAMINDESIGN LLC**

« »«  »    JACEK SKARZYNSKI              « »«  »
*(Printed name and title)*                             *(Printed name and title)* solely in his capacity  as manager

AIA Document A102" – 2017. Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997, 2007 and 2017 by The American Institute of Architects. All rights reserved. The "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks and may not be used without permission. This draft was produced by AIA software at 12:27:55 ET on 03/16/2021 under Order No.321683084G which expires on 02/27/2022, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents⁵ Terms of Service. To report copyright violations, e-mail copyright@aia.org.
User Notes:                                                                                                          (1834447687)

13

EXHIBIT "A"



| | 1413NVE-01 | MSANTELICES |
|---|---|---|

# CERTIFICATE OF LIABILITY INSURANCE

**DATE (MM/DD/YYYY)**
**12/22/2021**

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER License # L100460 | CONTACT NAME: Melissa Santelices | | |
|---|---|---|---|
| Acentria Insurance - Miami | PHONE (A/C, No, Ext): (305) 446-5474 | | FAX (A/C, No): (305) 444-8796 |
| 8700 W Flagler St #320 | E-MAIL ADDRESS: | | |
| Miami, FL 33174 | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| | INSURER A : Mt. Hawley Insurance Company | | 37974 |
| INSURED | INSURER B : Evanston Insurance Company | | 35378 |
| Ramin Design LLC | INSURER C : | | |
| 18101 Collins Avenue #3902 | INSURER D : | | |
| Sunny Isles Beach, FL 33160 | INSURER E : | | |
| | INSURER F : | | |

## COVERAGES   CERTIFICATE NUMBER:   REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|---|
| A | X | COMMERCIAL GENERAL LIABILITY | | | MGL0194719 | 12/20/2021 | 12/20/2022 | EACH OCCURRENCE | $ 1,000,000 |
| | | CLAIMS-MADE X OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ 50,000 |
| | | | | | | | | MED EXP (Any one person) | $ 5,000 |
| | | | | | | | | PERSONAL & ADV INJURY | $ 1,000,000 |
| | | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $ 2,000,000 |
| | | POLICY X PRO-JECT LOC | | | | | | PRODUCTS - COMP/OP AGG | $ 2,000,000 |
| | | OTHER: | | | | | | | $ |
| | | AUTOMOBILE LIABILITY | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | | ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | | OWNED AUTOS ONLY SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | | HIRED AUTOS ONLY NON-OWNED AUTOS ONLY | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | | $ |
| B | X | UMBRELLA LIAB X OCCUR | | | EZXS3066985 | 12/20/2021 | 12/20/2022 | EACH OCCURRENCE | $ 5,000,000 |
| | X | EXCESS LIAB CLAIMS-MADE | | | | | | AGGREGATE | $ 5,000,000 |
| | | DED X RETENTION $ 0 | | | | | | | $ |
| | | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY Y / N | | | | | | PER STATUTE OTH-ER | |
| | | ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) | | N / A | | | | E.L. EACH ACCIDENT | $ |
| | | If yes, describe under DESCRIPTION OF OPERATIONS below | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | | | | | | | | E.L. DISEASE - POLICY LIMIT | $ |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

Location of Work: 1413 N Ventian Way, Miami, Florida. The following are added as additional insured : Jacek & Olga Skarzynski on a primary and non-contributory basis. Waiver of Subrogation in favor of the additional insured.

CGL - 398 extended period of indemnity / productscompleted operations  60 months

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| Jacek & Olga Skarzynski 589 Johnson Avenue Brooklyn, NY 11217 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. AUTHORIZED REPRESENTATIVE |

ACORD 25 (2016/03)   © 1988-2015 ACORD CORPORATION. All rights reserved.

The ACORD name and logo are registered marks of ACORD

EXHIBIT B

Design Parameters and Goals, Additional Contractual
<u>Requirements and Owner Acknowledgments</u>

A.  All terms of the Contract are subject to the following parameters and goals which are adopted and incorporated into the Contract:

The Contract is a "Spec Project" for  a new +/- 8,000 square foot, two-story, 6-bedroom, 6½-bathroom waterfront mansion embodying a combination of modern architectural simplicity and luxury amenities including:

•      Top-of-the-line finishes similar to the finishes used in the real property sold at 10 W San Marino Drive, Miami Beach, FL 33139 (the "10 W. San Marino Dr. Property").

•      Dramatic entrance with double-height ceilings and a striking 23-foot tall limestone piece with organic finish; the feasibility, undertaking, scale and scope of the foregoing will depend and be contingent upon city planning approval.

•      Living areas with 12-foot ceilings; the feasibility, undertaking, scale and scope of the foregoing will depend and be contingent upon city planning approval.

•      Stone flooring throughout the first floor similar to the stone flooring used in the 10 W. San Marino Dr. Property.

•      Seamless wood floors throughout the second floor similar to the wood flooring used in the 10 W. San Marino Dr. Property.

•      Boffi gourmet kitchen with adjoining chef's/service kitchen to the back similar to the kitchen in the 10 W. San Marino Dr.  Property.

•      Waterfront family room; the feasibility, undertaking, scale and scope of the foregoing will depend and be contingent upon  city planning approval.

•      Dining area.

•      Entertainment bar (wet bar with a pocketed TV screen); the feasibility, undertaking, scale and scope of the foregoing will depend and be contingent upon city planning approval.

•      Living room with wall-to-wall, automatic sliding glass doors; the feasibility, undertaking, scale and scope of the foregoing will depend and be contingent upon city planning approval, space in the completed structure and which will be consistent with interior design.

•      Powder room.

•      Movie theater equipped with state-of-the-art sound system and lighting similar to the items installed in the 10 W. San Marino Dr. Property

• Custom doors; the feasibility, undertaking, scale and scope of the foregoing will depend and be contingent upon city  planning approval, space in the completed structure and which will be consistent with interior design.

• Savant home-automation smart technology system similar to the system installed in the 10 W San Marino Dr. Property

• Interior speakers similar to the equipment installed in the 10 W San Marino Dr. Property.

• Ultra-modern Boffi fixtures similar to the fixtures installed in the 10 W San Marino Dr. Property; the foregoing is subject  to and conditioned upon the availability of the items; the goal is to install Boffi fixtures that are the same models used at the 10 W San Marino Dr. Property or which are equivalent to such models and may include any upgraded models.

• Porsche Design lighting similar to the lighting installed in the10 W San Marino Dr. Property.

• Master suite enclosed with 3 walls of floor-to-ceiling glass offering views in the house similar to the views of comparable space at the 10 W. San Marino Dr. Property; the feasibility, undertaking, scale and scope of the foregoing will depend and be conditioned upon city planning approval and which will be consistent with interior design or if required to capture appropriate views.

• Walk-in master closet by Italkraft or similar to that installed in the 10 W. San Marino Dr. Property.

• Lavish marble master bathroom with hers and his vanities and an oversized bathtub surrounding an opulent, glass-enclosed marble shower similar to that installed at the 10 W. San Marino Dr. Property; the design of the foregoing is subject to and conditioned upon it being consistent with the interior design and layout of structure and the attainment of city planning approval.

• Four bedrooms on the second floor; two bedrooms on the first floor.  The layout and design of the structure will be similar to the 10 W San Marino Dr. Property, provided and subject to the attainment of city planning approval.

• Air-conditioned 2-car garage with space for a lift; provision for a garage is conditioned upon and subject to the attainment of city planning approval and which will be consistent with the design for the structure; the final design is not required to provide for any garage,  attached or detached, and may include an alternate design for vehicle parking and/or storage.

• Full house generator similar to that used in the 10 W. San Marino Dr. Property.

• Oversized outdoor speakers similar to that used in the 10 W. San Marino Dr. Property.

• Rooftop deck similar to that used in the 10 W. San Marino Dr. Property.

• Heated saltwater pool with spa similar to that used in the 10 W. San Marino Dr. Property.

• Cabana with Summer Kitchen similar to that used in the 10 W. San Marino Dr. Property; subject to and conditioned upon the attainment of city planning approval and which will be consistent with the final design of the Project.

• Automatic landscaping sprinkler system similar to that used in the 10 W. San Marino Dr. Property.

• Impact windows similar to that used in the 10 W. San Marino Dr. Property.

• New large IPE wood dock and boat lift suitable for up to a 45-foot boat similar to that used in the 10 W. San Marino Dr. Property; subject to and conditioned upon the final design and approval by city planning, Florida Department of Environmental Resource Management ("DERM"), Florida Department of Environmental Protection ("DEP") and United States Army Corps of Engineers.

• New 10-foot high seawall or similar to that used in the 10 W. San Marino Dr. Property.

B. The parties further acknowledge and agree to the following additional terms to govern the Contract:

• The scope of the Contract is for Contractor to undertake a "Spec Project" to build a "spec house" which Owner may sell for a profit. As such, this Contract envisions minimal changes to the design which is being provided by Contractor.

• Contractor will earn its fee equal to twenty (20%) percent of the Contract value of $6,500,000.00 or $1,300,000.00, irrespective of any adjustments, alterations or changes requested by Owner that have the effect of reducing Owner's cost or any adjustments, alterations or changes that Owner requests to the Contract project parameters that result in a deviation from the Contract's "Spec Project" goals as established in this Exhibit "B". If the Contract cost increases through adjustments, alterations or changes requested by Owner, Contractor will earn its twenty (20%) fee on any increased or additional cost.

• The design documents for the Project will include detailed criteria and specifications. Contractor will use its best efforts to mirror the criteria and specifications used in the 10 W. San Marino Dr. Property but with the express understanding that: (1) the above-listed criteria and goals are not hard and fast but only baselines and aspirational goals which are subject to change by Contractor as needed; (2) the Project is located on a different island than 10 W. San Marino Dr. Property, faces in a different direction (North) than 10 W. San Marino Dr. Property, provides different views than the 10 W. San Marino Dr. Property, and is located in a different municipality than 10 W San Marino Dr. Property, (3) that the physical, locational and jurisdictional differences between the property where Project will be built and the 10 W. San Marino Property may require the use of different design criteria than used in the 10 W. San Marino Dr. Property, (4) that the Project will be governed by different codes, ordinances and

rules than the 10 W. San Marino Dr. Property and (5) it may not be possible for Contractor to achieve all of the above-stated goals for the Project.

• Contractor will be using subcontractors, suppliers and material men in connection with the Project. Contractor will directly pay all such subcontractors, suppliers and material men and obtain releases of liens under Chapter 713, Florida Statutes, from them for work and/or materials provided.  Owner will  not pay any subcontractors, suppliers and/or material men except with Contractor's prior written consent.

Upon delivery by Contractor to Owner of a request for a Progress Payment, Owner shall pay such request not later than five business days after receipt.

Any adjustment, alteration or change to the Contract requirements or Spec Project goals that are made by the Parties shall be in the form of a change order fully signed and executed by the parties hereto in the event that such adjustment, alteration or change exceeds the sum of $25,000.

• Owner will be using financing provided by TD Bank to fund this Contract. The parties acknowledge and agree that Contractor has no legal or other obligations to TD Bank in connection with the Project.  Contractor, however, agrees to cooperate with Owner in connection with Owner's satisfaction of TD Bank's requirements.  Contractor further agrees to cooperate with any inspector sent by TD Bank.