**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

CASE NO.: 1:23-cv-24838-JAL

RAMINDESIGN, LLC, a Florida limited liability company,

Plaintiff,

v.

JACEK SKARZYNSKI and OLGA SKARZYNSKI,

Defendants.
_________________________________ /

JACEK SKARZYNSKI,

Counter-Plaintiff,

v.

RAMINDESIGN, LLC, a Florida limited liability company, RAMINDESIGN + DEVELOPMENT, LLC a Florida limited liability company, LHF CONSTRUCTION, INC., a Florida corporation, and LARRY FEDER, an individual,

Counter-Defendants.
_________________________________/

**DEFENDANTS JACEK SKARZYNSKI AND**
**OLGA SKARZYNSKI'S MOTION FOR SUMMARY JUDGMENT**

Defendants Jacek Skarzynski ("Jacek") and Olga Skarzynski ("Olga"), pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1, respectfully request the entry of summary judgment dismissing Plaintiff Ramindesign, LLC's ("Ramindesign") Amended Complaint (D.E. 5), or, in the alternative, dismissing Count V, for the reasons stated below.

**PROCEDURAL BACKGOUND**

Because the issues raised by this Motion relate to two prior Motions, the context and outcome of those Motions bear noting. Defendants filed a Motion to Dismiss the Complaint, largely on the basis of Plaintiff being an unlicensed contractor under Florida Statutes 489.119 and 489.127, rendering the claims unenforceable under Section 489.128(1). (D.E. 16). Opposing that Motion, Ramindesign made two arguments: 1) it did not act as a contractor under the statute and 2) even if it engaged in construction as per Section 489.105(3), the work was performed by a general contractor effectively serving in the role of a secondary qualifying agent. (D.E. 33, p. 11). This Court denied the Motion, finding that "Plaintiff has plausibly alleged that it had a qualifying agent responsible for the project as of the contract's effective date" (D.E. 62, p. 10) and so the claims should not be dismissed "at this early stage in the litigation" (i*d*., p, 11).

Since the Motion was decided, Plaintiff has clarified and simplified its position on the licensing issue. Ramindesign no longer asserts that it had a qualifying agent. In its answers to Defendants' interrogatories #17 and 18, Ramindesign stated that it does not claim it used a primary or secondary qualifying agent for the Project and did not need to because it "did not act as a general contractor or other contractor requiring licensure". Expanding upon this in its answer to Defendants' interrogatory #1, Plaintiff stated that it did not undertake any work requiring a license, but, rather, only performed "incidental support work" such as:

> managing payment records, entering contracts with material suppliers and subcontractors, paying material suppliers and subcontractors, bookkeeping, back office operations, day labor, trash pickup, expediting material delivery, mitigating supply issues, securing, ensuring subcontractors had means to perform work, coordinating and expediting in support of developer timeline obligations, and communications.

Defendants now respectfully request summary judgment dismissing the Amended

Complaint in its entirety based on Ramindesign having entered into a contract with Jacek to act as a contractor as defined in Section 489.105 but without the required license, as shown by the pleading, the contract, and discovery.

As concerns the alternative relief requested on this Motion, Defendants filed a Motion to Discharge Plaintiff's Notice of Lis Pendens or to require the Posting of a Lis Pendens Bond. (D.E. 135). The relief was requested because Jacek and Olga had entered into a loan transaction requiring the removal of Ramindesign's Notice of Lis Pendens to disburse all of the loan proceeds. (*Id*., p. 4). That Motion was resolved through Plaintiff's agreement to a stipulation discharging its Notice of Lis Pendens in recognition of Defendants' furnishing of a surety bond (D.E. 139), which this Court granted (D.E. 144). Should this Court decline to dismiss the Amended Complaint in its entirety, Defendants respectfully request the dismissal of the claim for an equitable lien as unavailing under the law.

**INTRODUCTION**

Despite entering into a contract to construct a house for Jacek (D.E. 6) ("the Contract") and claiming a right to a total payment of over $14.5 million for construction work (SMF ¶ 66, Ex. M, p. 29), Ramindesign asserts it did not act as a contractor on this project. What Plaintiff agreed to and did according to the Contract, the allegations in the Amended Complaint, its interrogatory answers, the deposition testimony, and the documentary evidence submitted on this Motion all come within the statutory definition of a contractor. In short, Ramindesign contracted to and constructed a house for Jacek. That is the essence of the term contractor in Section 489.105. To do so required a contractor's license however, which Ramindesign did not have. Furthermore, while Ramindesign no longer claims that it effectively had a secondary qualifying agent, even if it were to make that argument again, it cannot prevail. Recent Florida caselaw shows that a company

that entered into a contract to perform the work of a contractor and which did perform that work cannot evade the statute by outsourcing the fulfillment of the licensing requirement to a third party. To the contrary, the business organization must employ a primary or secondary qualifying agent. Since it acted as a contractor but did not employ a primary or secondary qualifying agent and was not registered or certified as a contractor, Section 489.128 bars Ramindesign from recovering on its claims for money owed for work as a contractor.

As to Count V, the Amended Complaint contains no allegations of special circumstances to support the extraordinary remedy of an equitable lien, nor of how Plaintiff lacks an adequate legal remedy. Moreover, Ramindesign's lack of an adequate remedy at law is due to its violation of the Florida licensing requirement and, thus, of its own making. Therefore, apart from its being untenable under Section 489.128, the equitable lien claim is invalid as a matter of Florida precedents.

**UNDISPUTED MATERIAL FACTS**

This Motion for Summary Judgment is based upon the facts set forth in Defendants' Statement of Material Facts in Support of their Motion for Summary Judgment against Ramindesign ("SMF") and the supporting evidence attached to and referenced in it.

**SUMMARY JUDGMENT STANDARD**

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment for a defendant is appropriate when the plaintiff 'fails to make a sufficient showing to establish the existence of an element essential to [her] case, and on which [she] will bear the burden at trial.'" *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 805-06 (1999) (bracketed words in original) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).

"If the non-movant in a summary judgment action fails to adduce evidence which would be sufficient, when viewed in a light most favorable to the non-movant, to support a jury finding for the non-movant, summary judgment may be granted." *Brooks v. Blue Cross & Blue Shield of Fla., Inc*., 116 F.3d 1364, 1370 (11th Cir. 1997) (citation omitted).

If the evidence offered by the nonmoving party is merely colorable or is not significantly probative, summary judgment is proper. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249-50 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Id*. at 247-48 (emphasis original). A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. The applicable substantive law will determine which facts are "material," and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id*.

## MEMORANDUM OF LAW

### I. THE AMENDED COMPLAINT SHOULD BE DISMISSED UNDER FLA. STAT. § 489.128(1) BECAUSE RAMINDESIGN WAS AN UNLICENSED CONTRACTOR

#### a. Ramindesign's Role on the Project Meets the Definition of "Contractor"

Section 489.105(3) has a two-pronged definition of the term contractor. First, a contractor must be one "who, for compensation, undertakes to, submits a bid to, or does himself or herself or by others construct, repair, alter, remodel, add to, demolish, subtract from, or improve any building or structure, including related improvements to real estate". Second, to be considered a contractor required to be licensed, one must have a "job scope … substantially similar to the job scope described in one of the paragraphs of this subsection." *Full Circle Dairy, LLC v. McKinney*, 467

F. Supp.2d 1343, 1346 (M.D. Fla. 2006).

Both prongs of the statute's definition of contractor are satisfied here. The essence of the Amended Complaint is that Ramindesign undertook to construct a building, specifically, a house, for Jacek for compensation, but did not receive compensation in full. Plaintiff alleges that it "agreed to build a 'spec" home' at the Property in return for certain fees" (D.E. 5, Amended Complaint, ¶ 37); "proceeded with the work" (*id*., ¶ 24); "fully performed its duties in connection with the Agreement" until termination (*id*., ¶ 38); and engaged in the "performance of labor, materials and services at the Property" (*id*., ¶ 59). Whether the building that Ramindesign agreed to construct under the Contract was a "spec home" or another type of house is immaterial; the statute applies to "any building or structure". The Contract further establishes that Plaintiff undertook to construct a building for compensation. For example, pursuant to Article 2, Ramindesign agreed to "design and build a residential two-story single family 'spec' home" (SMF, ¶ 4); "furnish … supervision; to furnish at all times adequate supply of workers and materials" (*id*. ¶ 6); be reimbursed for its costs for labor, subcontractors, materials, and equipment (*id*. ¶ 8); and receive a fee of twenty percent of the construction costs (D.E. 6, Contract,, p. 5, ¶ 5.1.1). The term Work in the Contract refers to construction work. (SMF, ¶ 5). Besides undertaking to build a house for Jacek, Ramindesign admits to having constructed a house for Jacek. This admission is in the Amended Complaint, including paragraphs 38, 46, 51, 59, and 64. Furthermore, Plaintiff stated in its answer to Defendants' interrogatory #1 that it entered into subcontracts, ensured that the subcontractors had the means to perform their work; and paid the subcontractors. Consequently, Ramindesign did "by others construct … [a] building". Fla. Stat. § 489.105(3). Therefore, Ramindesign undertook to and constructed a building for compensation, meeting the first prong of the statutory definition of contractor.

Likewise, Plaintiff had a scope of work coming within subsections b and c of Fla. Stat. § 489.105(3), thereby satisfying the second prong. Subsection b provides that the scope of work of a building contractor is constructing commercial buildings and single and multiple-dwelling residential buildings not exceeding three stories while subsection c provides that the scope of work of a residential contractor is constructing one, two, or three family residences not exceeding two stories above one uninhabitable story. On the first page of the Contract, the project is stated to be "New construction of a two-story waterfront Spec. home" (D.E. 6, Contract, p. 2) and in Article 2 Ramindesign agreed to "build a residential two-story single family 'spec' home" (SMF, ¶ 4). Exhibit B to the Contract expands upon this scope, stating that it was "a new +/- 8,000 square foot, two-story, 6-bedroom, 6{&]1/2 – bathroom waterfront mansion" (D.E. 6, Contract, p. 17), with more details in the following bullet points. That is then summarized again on page 3 of Exhibit B to the Contract, where it is stated "[t]he scope of the Contract is for Contractor to undertake a 'Spec Project' to build a 'spec house' which Owner may sell for a profit." (SMF, ¶ 11; D.E. 6, p. 20).

The evidence submitted with this Motion beyond the Amended Complaint and the Contract further establishes that Ramindesign acted as a contractor. Ramindesign states in its website that it "leads construction projects by providing general contracting services" and is "responsible for construction contracts". (SMF, ¶ 21). In an early email to Jacek, Ramindesign described the type of contract they would enter into as "general construction" and named itself as the contractor. (*Id.*, ¶ 22). Ramindesign was the entity that had supervisory personnel at the site (*id.*, ¶ 34) and its principal was there every day, up to seven or eight times a day, to make sure the construction work was progressing (*id.*, ¶ 35). At one point, Ramindesign stated that it would need to stop work at the project for a day or two. (*Id.*, ¶ 57). Later, Ramindesign discussed how it was "moving very fast" in installing and completing work. (*Id.*, ¶ 58). Ramindesign submitted payment applications

for construction work, such as civil, electrical, stairs, and windows. (*Id*., ¶ 61). Its payment applications #9, 10, 11, and 12 also included a sum for a "GC Fee". (I*d*., ¶ 62). GC is a common abbreviation for general contractor. *See Rhythm & Hues, LLC v. Nature's Lawn Care, Inc.*, 368 So.3d 12, 14 (Fla. 4th DCA 2023); *F.H. Paschen, S.N. Nielsen & Associates LLC v. B&B Site Development, Inc.*, 311 So.3d 39, 43 (Fla. 4th DCA 2021). Ramindesign filed a Claim of Lien for its "labor, services, property improvements and materials. (SMF, ¶ 60). Under Fla. Stat. § 713.01(19), only a contractor, subcontractor, sub-subcontractor, laborer, materialman, and a section 713.03 professional may file a claim of lien. Ramindesign fatally contradicts itself by asserting that it was not a contractor for the purpose of the licensing requirement but was a contractor in filing a claim of lien.

In short, Ramindesign agreed to and was in the process of building a home for Jacek. (SMF, ¶¶ 4, 11, 59). Therefore, Ramindesign was the entity responsible for and that undertook the construction of a building. *See Deep South Systems, Inc. v. Heath*, 843 So.2d 378, 380 (Fla. 2d DCA 2003). Accordingly, Ramindesign was required to be licensed under Section 489.105. *Id*. at 381.

**b. Ramindesign was not a Licensed Contractor**

Neither Ramindesign nor its principal, is a licensed contractor in Florida. (SMF, ¶¶ 25, 26). For a business organization to be licensed as a contractor, it must be registered or certified to engage in the business of contracting. Fla. Stat. § 489.113(2). That requires a licensed individual to apply for registration or certification as the qualifying agent of the business organization. Fla. Stat. § 489.119(2). There are two types of qualifying agents. A primary qualifying agent "has the responsibility, to supervise, direct, manage, and control the contracting activities of the business organization with which he or she is connected … [and the] construction activities on a job for

which he or she has obtained the building permit". Fla. Stat. § 489.105(4). A secondary qualifying agent "has the responsibility, to supervise, direct, manage, and control the construction activities on a job for which he or she has obtained a permit". Fla. Stat. § 489.105(5). Since Ramindesign is not licensed, that necessarily means that either a licensed individual did not apply for a license as a qualifying agent on its behalf or that the application was rejected.

Furthermore, Ramindesign did not use a primary or secondary qualifying agent on this project. (SMF, ¶ 27). Therefore, the issue of fact that this Court found to preclude the dismissal of the Amended Complaint at the inception of this action – "Plaintiff has plausibly alleged it is a business organization that had 'a primary or secondary qualifying agent in accordance with [Chapter 489] concerning the scope of the work to be performed under the contract'" – is no longer. Plaintiff does not allege "it is a business organization that had 'a primary or secondary qualifying agent in accordance with [Chapter 489] concerning the scope of the work to be performed under the contract.'" That should end the inquiry and given that Ramindesign acted as a contractor but was not licensed, it is barred from recovery under Section 489.128. However, even if Ramindesign switches its position again and asserts that it effectively had a qualifying agent through its contract with LHF Construction, Inc. ("LHF"), that arrangement would not constitute compliance with Chapter 489 under Florida law.

An examination of case law and Chapter 489 shows that Florida makes a distinction between a business organization employing a qualifying agent and one contracting with a third party qualifying agent. Business organizations which employ a qualifying agent have been held to have complied with Chapter 489, even where the paperwork was not perfectly done. On the other hand, business organizations which contract with a third party to satisfy the licensing requirement have been held to have violated Chapter 489, and, thus, be precluded from recovering

for their services.

In *Lake Eola Builders, LLC v. Metro. at Lake Eola,* 416 F. Supp. 2d 1316 (M.D. Fla. 2006), which this Court relied on in the Order denying Defendants' Motion to Dismiss, Andrew Owens was one of two owners of the plaintiff and its registered agent. *Id*. at 1317. Mr. Owens was a licensed general contractor. *Id*. at 1320. He signed the contract for the plaintiff, which asserted he supervised and was responsible for the construction project at issue from the beginning. *Id*. Accordingly, despite the plaintiff itself not being licensed, the court, applying substance over form, held that there was evidence to support a conclusion that the business organization should be considered licensed. *Id*. Likewise, in the other case cited by this Court on the licensing issue, *Taylor Morrison Services, Inc. v. Ecos*, 163 So.3d 1286 ((Fla. 1st DCA 2015), the Florida Department of Business and Professional Regulation Construction Industry Licensing Board listed four licensed contractors as qualifying agents for the defendant construction company. *Id*. at 1288. Although one had resigned from the company before the effective date of the contract at issue and the building permit was applied for in her name, *id*., the court held that the company was licensed because it employed another licensed contractor as its primary qualifying agent on the effective date of the contract at issue. *Id*. at 1288, 1292. Therefore, the company had complied with the statute. Here, it is undisputed that Ramindesign did not employ a licensed contractor, let alone that a licensed contractor signed the Contract.

Subsequent to this Court's decision denying Defendants' Motion to Dismiss, the Fifth District Court of Appeals concluded that a construction company cannot satisfy the licensing requirement of Chapter 489 by contracting with a third party, as opposed to having a licensed individual as an employee. In *South Wild Olive, LLC v. Total Maintenance Services, LLC,* 387 So.3d 1254 (Fla. 5th DCA 2024), Total Maintenance Services, LLC ("Total Maintenance") entered

into a contract in which it was identified as "Contractor" with South Wild Olive, LLC ("South Wild"), a homeowner, to remodel a home. Total Maintenance filed an action to recover for its services. South Wild defended the action on the grounds that Total Maintenance was not licensed as a business organization. Total Maintenance responded that the homeowner knew it was unlicensed; that Total Maintenance subsequently became licensed; and that a third party, Vulcan Builders, LLC ("Vulcan"), served as the general contractor for the project. *Id*. at 1256. The Fifth District Court of Appeals rejected all of these arguments, holding that the homeowner was entitled to sanctions for having to defend a baseless litigation. The homeowner's purported knowledge that the construction company was unlicensed was irrelevant under *Earth Trades, Inc. v. T &G Corp.*, 108 So.3d 580 (Fla. 2013) and the subsequent licensing of the company was irrelevant under *Taylor Morrison Services*, 163 So.3d 1286. 387 So.3d at 1258. Regarding the assertion that there was a third party general contractor, the court noted that Vulcan was not mentioned in the parties' contract; that the construction company was identified as Contractor in that contract, and not as a subcontractor; and that Vulcan was not mentioned in the pleadings. Rejecting all of the assertions by the unlicensed contractor that there was a basis to assert a claim despite the violation of Chapter 489, the court stated "[t]he bottom line is that Law Firm filed a breach of contract complaint for a contractor it knew to be unlicensed – even though the contract was unenforceable." *Id*.

Any reliance by Ramindesign on LHF as being the general contractor should be rejected by this Court, just as the court in *South Wild Olive* rejected Total Maintenance's reliance on Vulcan being the general contractor. Just as in *South Wild Olive*, the Contract here identifies Ramindesign as the Contractor. Just as in *South Wild Olive*, the Contract here does not disclose the identity of a third party contractor, or of its existence. (SMF, ¶ 14). Just as the pleadings in *South Wild Olive*

did not name Vulcan, the Amended Complaint does not name LHF. Under *South Wild Olive*, the contractor itself, here, Ramindesign, is required to employ a licensed contractor and cannot satisfy the statutory requirement by farming out the satisfaction of the licensing requirement to another company.

*South Wild Olive* is in accord with Chapter 489 and other Florida cases. Section 489.119(3)(a) states that where the only qualified person of a business organization ceases to be affiliated with it, the company has sixty days "to employ another qualified agent" and "may not engage in contracting until a qualifying agent is employed". That section goes on to provide an exemption from licensing for business organizations with a net worth of twenty million dollars or more that only engage in contracting on property they own so long as they employ a registered or certified licensed contractor who is responsible for obtaining permits and supervising all of the company's contracting activities. Fla. Stat. § 489.119(7)(a). The statute's use of the word employ is significant. Employing a person creates an employer/employee relationship, as opposed to an independent contractor relationship. *See, e.g., Harper ex rel. Daley v. Toler*, 884 So.2d 1124, 1131 (Fla. 2d DCA 2004).

Additionally, Section 489.127(a) prohibits a licensed contractor from entering into an agreement to allow an unlicensed contractor to use its license number while subsection c prohibits a licensed contractor from applying for a building permit unless it has entered into a contract to make improvements to or to perform the contracting at the property. That, however, is exactly what LHF did, as it allowed Ramindesign to use its license number to apply for a building permit even though LHF did not contract to make improvements or perform the contracting at Jacek and Olga's property.

Florida cases have consistently rejected an arrangement by an unlicensed contractor to use

another person or company's license to make an end-run around the statute. In *Boatwright Const., LLC v. Tarr*, 958 So. 2d 1071 (Fla. 5th DCA 2007), the court stated that an unlicensed construction company which had contracted with (but did not employ) a licensed person to serve as its qualifying agent could not have successfully brought an action against the property owner to recover monies for work performed under their contract to construct a restaurant. *Id*. at 1072, 1074. Likewise, a business performing the work of a contractor as defined by Section 489.105 cannot evade the licensing requirement by claiming it was being supervised by a licensed contractor. *See Deep South Systems*, 843 So.2d at 380-81.

The circumstances here show that Florida's refusal to allow a construction company to outsource satisfying the statutory licensing requirement to a third party contractor is well-founded. The facts show that the contract between Ramindesign and LHF was a sham arrangement. By no means was LHF hired to be an actual contractor. Section 489.105(4) and (5) require a qualifying agent to have the responsibility to "control the construction activities" on the job for which he or she obtained the permit. To the contrary, Mr. Feder testified at his deposition that "he didn't want to interfere with any of the work"; "had no control over [the workers] and I didn't want control over them" (SMF, ¶ 30) and did not even know who the subcontractors were (SMF, ¶ 39). Allowing a construction company to engage in this type of sham arrangement undermines the very purpose of the licensing statute.

Moreover, the continued viability of *Lake Eola Builders* has recently been called into question. A business organization which performed contracting but was never qualified to do so is unlicensed and, thus, precluded by Section 489.128 from recovering for the work performed regardless of whether it is owned by a licensed individual. C*AM Bradford Homes, LLC v. Arrants*, 415 So.3d 266 (Fla. 5th DCA 2025). The court's reasoning is instructive:

> Appellant argues a business organization contractor only needs to have a licensed individual perform the obligations of a qualifying agent to raise a material issue of fact as to whether the organization "has" a qualifying agent. This argument is unpersuasive. If the Legislature had intended the requirements to have been met by an "acting" qualified agent, it would not have explicitly provided that *only* a sole proprietorship may rely on the license of an individual without applying with the Department. *** Moreover, accepting the assertion that Bradford [the company's owner] was Appellant's qualifying agent despite his failure to apply would render meaningless the statutory provisions prohibiting business organizations from engaging in contracting without being certified or registered, *id.* § 489.127(1)(f), as well as those prohibiting a certified or registered contractor from allowing an unqualified business organization to use their individual certification or registration number to engage in contracting. ***
>
> ***
>
> *** As Bradford never applied, the business never had a qualifying agent and was never licensed by the Department. As an unlicensed contractor, Appellant could not enforce the contract, and the trial court did not err in granting summary judgment.

*Id*. at 269-270 (citations omitted).

Recognizing that its holding directly contradicted the result reached in *Lake Eola Builders*, the court in C*AM Bradford Homes* stated in footnote 4 of its decision that it did not find that case to be binding due to the change in the language of Chapter 489 that was subsequently enacted. Specifically, the court in *Lake Eola Builders* found it significant that Fla. Stat. § 489.128(1)(b) provided that the lack of a certificate of authority is not grounds for considering a business organization to be unlicensed. 416 F. Supp.2d at 1319. However, Section 489.128(1)(b) has since been amended to provide that the lack of a business tax receipt under the authority of chapter 205 (as opposed to a certificate of authority) is not grounds for considering a business organization to be unlicensed. Accordingly, the Fifth District Court of Appeals concluded that a business organization's lack of a certificate of authority, which cannot be obtained unless a licensed individual applies for one on behalf of the business organization, does now constitute grounds for

considering the company to be unlicensed. *CAM Bradford Homes*, 415 So.3d at 269-70.

Ramindesign concedes it was unlicensed. Even if it attempts to withdraw this admission, it cannot be considered to have met the statute's requirements through LHF's license under Chapter 489 and the caselaw.

**c. As an Unlicensed Contractor, Ramindesign is Barred From Recovery on All of its Claims**

"As a matter of public policy, contracts entered into on or after October 1, 1990 by an unlicensed contractor shall be unenforceable in law or in equity by the unlicensed contractor." Fla. Stat. § 489.128(1). Counts I and II allege claims for breach of contract. Counts III, IV, and V of the Amended Complaint allege claims for unjust enrichment, quantum meruit and an equitable lien, respectively against Defendants. Plaintiff adopts and realleges the allegations in paragraphs 1 through 35 of the Amended Complaint in every count. (D.E. 5, ¶¶ 36, 42, 49, 57, 62). Paragraphs 1 through 35 of the Amended Complaint include allegations that Ramindesign and Jacek entered into a contract. Thus, the equitable claims rely on the same underlying basis and the same set of facts as the breach of contract claims. (*Id*., ¶¶ 10-17). As set forth in sections a and b above, Ramindesign is as an unlicensed contractor. Therefore, Section 489.128(1) provides that it has no enforceable contract under any legal theory. In its decision on Defendants' Motion to Dismiss, this Court categorized Counts III, IV, and V as equitable claims. (D.E. 62, p. 17). This Court also recognized the preclusive effect of Section 489.128(1), quoting the statute in its discussion of those claims. (*Id*., p. 14). In doing so, this Court followed the holding of *Full Circle Dairy,* 467 F. Supp.2d at 1349-1350 (M.D. Fla. 2006) that an unlicensed contractor has no right to recover under an equitable claim of quantum meruit. The court in *Full Circle Dairy* reasoned: "the addition of the phrase 'or in equity' was intended to bar unlicensed contractors from bringing equitable claims in those same situations where they are disabled from bringing actions at law. Otherwise, the

language has no real meaning." *Id.* at 1350. Emphasizing that Section 489,128(1) does not allow an end run around the bar to recovery for unenforceable contracts through alternative claims, the court stated: "[t]o preclude legal claims, but not equitable claims, merely encourages unlicensed contractors to masquerade their contract claims as equitable claims, thus vitiating the full deterrent effect that the Legislature seeks." *Id.* at 1354.

## II. IN THE ALTERNATIVE, SUMMARY JUDGMENT IS WARRANTED DISMISSING PLAINTIFF'S CLAIM FOR AN EQUITABLE LIEN

Count V should be dismissed as part of the entire Amended Complaint on the grounds that Ramindesign is an unlicensed contractor and, therefore, barred by the statute from pursuing both its legal and equitable claims. If this Court concludes that Ramindesign may proceed with its claims at this juncture, the claim for an equitable lien should nonetheless be dismissed on the additional basis that it is invalid as a matter of law.

The leading case on a claim for an equitable lien in the context of an action to recover payment for construction services is *Crane Co. v. Fine*, 221 So.2d 145 (Fla. 1969). In *Crane Co.*, the Florida Supreme Court held that a plumbing supplier could maintain both a claim to foreclose on a mechanic's lien and a claim to impose an equitable lien. However, the equitable lien was not co-extensive with the mechanic's lien since the equitable lien was sought to be imposed on undisbursed funds held by the general contractor that were due the plumbing subcontractor (the plaintiff's customer) and not on the real property on which the materials were used, as is the case for a mechanic's lien. *Id.* at 147-48. Furthermore, the Court did not hold that there is in all instances an absolute right to assert a claim for an equitable lien by a plaintiff that has the right to file a mechanic's lien (now termed a construction lien). Rather, special circumstances must be shown to justify the imposition of an equitable lien:

> An equitable lien is simply a right of a special nature over a

> particular property that may arise from a written contract which shows an intention to charge the particular property with a debt or obligation, or it may be declared by a court of equity out of a general consideration of right and justice as applied to the relations of the parties and the circumstances of their dealings in the particular case. It is a remedial tool used by chancery to prevent inequity or unjust enrichment of one party as against another. It is particularly appropriate in a situation in which the primary debtor has become insolvent, or has parted with the Res that in right and justice should be held answerable for the claim made against it.

*Id*. at 148 (citations omitted).

The special circumstances justifying the maintenance of the claim for an equitable lien in *Crane Co*. were (1) a "right of a special nature" in the undisbursed funds, which should have been paid by the general contractor to the plumbing subcontractor, which, in turn, would have used a part of those funds to pay the plumbing supplier and (2) that the plumbing subcontractor was insolvent and, thus, unable to pay the plaintiff. *Id*. at 148-49. In closing, the Court emphasized that an equitable lien is an extraordinary remedy that should only be used in extraordinary circumstances:

> Ordinarily, the only right or interest that such a materialman has in the funds payable under the direct contract by the owner-and, in the circumstances specified by the statute, in the property improved by his materials-arises out of the provisions of the Mechanics' Lien Law, Ch. 84, Fla.Stat.1965 (Ch. 713, Fla.Stat.1967, F.S.A.); and, in the absence of special or peculiar equities, his failure to perfect his statutory right thereunder leaves him only his remedies at law. We emphasize that this opinion is not to be interpreted as holding that a materialman is entitled to seek an equitable lien merely because his materials are incorporated in the improvement. We hold only that, because of the special and peculiar equities shown by the record in this particular case, the plaintiff should not be foreclosed from seeking an equitable lien merely because he was entitled to but failed to perfect his statutory materialman's lien.

*Id*. at 149.

The Florida Supreme Court thus explicitly stated that unless there are special or peculiar

equities, a plaintiff's right to recover on a property for nonpayment for construction services or materials is exclusively through a construction lien. However, where a subcontractor has an adequate remedy at law and no special equities are shown, it is not entitled to the extraordinary remedy of an equitable lien. *See Palm Beach Sav. & Loan Ass'n, F.S.A. v. Fishbein*, 619 So.2d 267, 269 (Fla. 1993); *Gabriji, LLC v. Hollywood East, LLC*, 304 So.3d 346, 349 (Fla. 4th DCA 2020); *Edd Helms Elec. Contracting, Inc. v. Barnett Bank of South Florida, N.A.,* 531 So.2d 238 (Fla. 3rd DCA 1988); *Cohen v. Lunsford*, 362 So.2d 383 (Fla. 1st DCA 1978). As stated by the Florida Supreme Court:

> We are unable to trace the elements of estoppel, resulting trust, or any similar equitable doctrine in support of a lien on the property as opposed to the specified fund, which fund is in no way relevant to the disposition of this suit. Our study of the cases indicates that the award of an equitable lien based on unjust enrichment or 'general consideration of right and justice' has in each instance been predicated on factors such as mistake or material misrepresentation beyond the circumstances described by the complaint in the present case.

*Merritt v. Unkefer*, 223 So.2d 723, 724 (Fla. 1969).

Consistent with *Crane Co.*, an architect that had an adequate remedy at law through a mechanic's lien but simply failed to pursue that claim was held not entitled to an equitable lien in *Dykema v. Trans State Industries, Inc*., 303 So.2d 52 (Fla. 2d DCA 1974). On the other hand, a party that was induced not to pursue the remedy of a mechanic's lien through promises of payment that were not fulfilled and can allege no adequate remedy at law may be entitled to an equitable lien. *Architectonics, Inc. v. Salem-American Ventures, Inc.*, 350 So.2d 581 (Fla. 2d DCA 1977).

Here, the Contract does not show an intention to charge the Property with the debt for the construction work performed by Ramindesign. (*See* D.E. 6). Further, it is apparent that Ramindesign had an adequate remedy at law through the construction lien it filed and through its

breach of contract claim.[1] Plaintiff's allegation in Count V that it lacks an adequate remedy at law, (*see* D.E. 5, ¶ 72), is a mere legal conclusion unsupported by any facts and, therefore, is entitled to no weight. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Am. Dental Ass'n v. Cigna Corp.*, 605 F. 3d 1283, 1290 (11th Cir. 2010). Additionally, Ramindesign has not alleged any facts to show special equities to justify the extraordinary remedy of an equitable lien. Its allegations of misrepresentation have no connection to Jacek and Olga's ownership of the property. Regardless of whether such representations were actually made, Ramindesign would have the same remedies for its claim for nonpayment. Accordingly, the claim for an equitable lien should be dismissed as a matter of law separate and apart from Fla. Stat. § 489.128(1)..

**CONCLUSION**

For all of the foregoing reasons, Defendants Jacek and Olga Skarzynski respectfully request that this Court grant summary judgment dismissing the Amended Complaint entirely, or, in the alternative, dismissing Count V.

Dated: December 1, 2025

By: /s/ ***Alan Winkler***
PECKAR & ABRAMSON, P.C.
One Southeast Third Avenue, Suite 2000
Miami, Florida 33131
Ph: 305-358-2600
Alan Winkler
New Jersey Bar No. 01251984 (admitted pro hac vice)
awinkler@pecklaw.com
Nadia Ennaji
Florida Bar No. 1002738
nennaji@pecklaw.com
*Attorneys for Defendants/Counter-Plaintiff*

[1] This argument is being made in the alternative as a precaution in the event this Court determines that Ramindesign has a right to pursue its claims under Chapter 489.

**CERTIFICATE OF SERVICE**

I hereby certify that on December 1, 2025, the foregoing document is being served on all counsel of record via CM/ECF.

By: /s/ ***Alan Winkler***
PECKAR & ABRAMSON, P.C.
One Southeast Third Avenue, Suite 2000
Miami, Florida 33131
Ph: 305-358-2600
Alan Winkler
New Jersey Bar No. 01251984
(admitted pro hac vice)
awinkler@pecklaw.com
Nadia Ennaji
Florida Bar No. 1002738
nennaji@pecklaw.com
*Attorneys for Defendants/Counter-Plaintiff*