**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 23-24838-CIV-LENARD

**RAMINDESIGN, LLC,**

      Plaintiff,

**v.**

**JACEK SKARZYNSKI and OLGA
SKARZYNSKI,**

      Defendants.
_____/

**JACEK SKARZYNSKI**,

      Counter-Plaintiff,

**v.**

**RAMINDESIGN, LLC, RAMINDESIGN +
DEVELOPMENT, LLC,**

      Counter-Defendants.
_____/

## **ORDER**

**THIS CAUSE** is before the Court on cross motions for summary judgment:

Defendant Skarzynski ("Jacek") and Defendant Olga Skarzynski's ("Olga") Motion for

Summary Judgment (D.E. 176),[1] the Response in opposition (D.E. 190), and Reply in

---

[1] Counter-Plaintiff Jacek previously filed his counterclaims against the named Counter-Defendants as well as LHF Construction, Inc., and Larry Feder (D.E. 71; D.E. 120; D.E. 148). However, Counter-Plaintiff has since dismissed his claims against Larry Feder and LHF Construction, Inc (D.E. 236; D.E. 237).

1

support (D.E. 205), as well as Ramindesign, LLC ("Ramindesign") and Ramindesign+Development, LLC's ("RDD") Motion for Partial Summary Judgment (D.E. 181), the Response in opposition (D.E. 184), and the Reply in support (D.E. 201). Upon review of the Motions, Responses, Replies, and the record, the Court finds as follows:

## I.   Background[2]

In February of 2021, Defendants Jacek and Olga purchased real property at 1413 North Venetian Way, Miami, Florida 33139 ("Property") for $5,950,000 (D.E. 179 ¶ 1; D.E. 182 ¶ 1). Jacek and Ramindesign entered into a contract dated January 27, 2022 ("Contract") pertaining to the design and construction of a "residential two-story single family 'spec' home" at the Property (D.E. 6 at 2). Jacek and Ramin Aleyasin, ("Aleyasin"), the owner of Ramindesign and RDD, executed the Contract (D.E. 179 ¶ 15; D.E. 8; D.E. 182 ¶ 8). Olga was not a party to the Contract (D.E. 6 at 2, 14). At the time Jacek and Ramindesign effectuated the Contract, neither Ramindesign, nor Aleyasin were licensed general contractors or contractors in Florida (D.E. 179-1 at 45).[3]

The Contract stated that Jacek engaged Ramindesign as a "spec developer" and referred to Ramindesign as the "contractor" throughout the document (D.E. 6; D.E. 182 ¶ 11).[4] Further, the Contract required Ramindesign "to plan, develop and manage the

---

[2] The following facts are undisputed by the Parties and supported by the record.

[3] Ramindesign's principal, Aleyasin, understood the term "Work" as used in the Contract to refer to the construction of the property (D.E. 179 ¶ 5).

[4] Ramindesign submitted thirteen payment applications to Jacek for the Project with each payment application stating: "[f]rom Contractor: Ramindesign LLC[,]" "Contract for General Construction[,]" and "Contractor's Application for Payment[.]" (D.E. 179 Ex. M).

construction of a 'spec' single family home on the Property[,]" (the "Project"), and the Contract gave Ramindesign discretion to carry out its duties (D.E. 182 ¶ 12; D.E. 5-1).

Additionally, the Contract contained numerous provisions pertaining to the Project, including:

- **Article 2 of the Contract**, which required Ramindesign to "design and build a residential two-story single family 'spec' home[,]" and provided that "this [c]ontract shall be construed under law solely and exclusively as an agreement for the development of residential real estate, and [o]wner and [c]ontractor expressly, knowingly and voluntarily waive the right to contend otherwise." (D.E. 6 at 2);

- **Article 3 of the Contract**, which required Ramindesign "to furnish efficient business administration and supervision; to furnish at all times an adequate supply of workers and materials; and to perform the Work in an expeditious and economical manner[.]" (D.E. 179, ¶ 6; D.E. 6, ¶ 4);

- **Article 4.3.2 of the Contract**, which defined substantial completion of the Project as Ramindesign having completed or installed "all major construction such as concrete pouring, stucco application, exterior and interior painting …, roof …, landscaping …, windows & doors …, balcony glass …, all exterior railings…, pool … and all exterior equipment … and 90% of all interior finishes" (D.E. 6 at 4);

- **Article 7.1.1 of the Contract**, which defined the term "Cost of the Work" to "mean costs necessarily incurred by the Contractor in the proper performance of the Work." (*Id*. at 6);

- **Articles 7.2-7.5 of the Contract**, which required Jacek to reimburse Ramindesign for its labor costs, including "construction workers directly employed by the Contractor[,]" subcontractors, materials, and equipment (*Id*. 6 at 6-7);

- **Article 7.5.1 of the Contract**, which provided for "[c]osts of transportation, storage, installation, dismantling, maintenance, and removal of materials, supplies, temporary facilities, machinery, equipment and hand tools not customarily owned by construction workers that are provided by the Contractor at the site[,]" and provided for "[c]osts for items not fully consumed by the [c]ontractor[.]" (*Id*.);

- **Article 7.6.3 of the Contract**, which provided for "[f]ees and assessments for the building permit, and for other permits, licenses, and inspections, for which the [c]ontractor is required by the [c]ontract [d]ocuments to pay." (*Id*. at 7);

- **Article 7.7.3 of the Contract**, which provided for "[c]osts of repairing or correcting damaged or nonconforming Work executed by the [c]ontractor, [s]ubcontractors, or suppliers[.]" (*Id*.);

- **Article 10.1 of the Contract**, which provided that "[t]hose portions of the Work that the Contractor does not customarily perform with the [c]ontractor's own personnel shall be performed under subcontracts[.]" (*Id*. at 9);

- **Exhibit B of the Contract**, which provided that "[t]he scope of the [c]ontract is for [c]ontractor to undertake a '[s]pec [p]roject' to build a 'spec house[,]'" (D.E. 6 at 19), and provided that "[c]ontractor will earn its fee equal to twenty (20%) percent of the [c]ontract value of $6,500,000.00 or $1,300,000.00, irrespective of any

4

adjustments, alterations or changes requested by [o]wner . . . to the [c]ontract project parameters that result in a deviation from the Contract's 'Spec Project' goals as established in this Exhibit 'B[.]'" (*Id.*).

At the time Ramindesign executed the Contract, it was not a licensed general contractor nor a contractor in Florida (D.E. 129, ¶ 26; D.E. 191 ¶ 26). However, Ramindesign engaged LHF Construction ("LHF"), whose qualifier was Larry Feder ("Feder"),[5] to assist with the Project (D.E. 182 ¶ 15; D.E. 179-9). The contract filed with the Court between Ramindesign and LHF (the "LHF Contract") was signed by Feder but was not signed by Ramindesign and was undated (D.E. 179-9 at 5; D.E. 179-1 at 195). Additionally, Aleysian sent the LHF Contract to Feder on June 29, 2022 (D.E. 179-8), approximately five months after the Contract was executed on January 27, 2022 (D.E. 6 at 2). Further, prior to executing the Contract, Ramindesign performed work on the Project for approximately ten months (D.E. 179-1 at 19-20).

Feder and LHF pulled the building permits for the Project, (D.E. 182 ¶ 15), and Feder's name was placed on the building permit application and building permit documents (D.E. 182 ¶ 17). Feder's duties on the Project were "to make sure the [Project] was running according to schedule and passed inspections[,]" and he went to the Property several times a week (D.E. 179-7 at 48). However, while Feder exercised some supervision over the Project, Feder's visits to the Property were generally after construction hours, and he did not have control over the workers on the Project (D.E. 179-7 at 48-49; D.E. 191 ¶ 30).

---

[5] Counter-Plaintiff has dismissed his claims against Larry Feder and LHF Construction, Inc (D.E. 236; D.E. 237).

Additionally, LHF's foreman did not know who the subcontractors were and did not supervise them (D.E. 179 ¶ 32-33; D.E. 179-7 at 47-49; D.E. 191 ¶ 32-33).

On or about December 15, 2023, Jacek terminated Ramin Design, (D.E. 182 ¶ 6), and in January 2024, Jacek hired general contractor Intelligent Construction to complete the Project (D.E. 182 ¶ 28; 182-1 at 142).[6] On March 4, 2024, Ramindesign filed a Claim of Lien against the Property, stating that it furnished "labor, services, property improvements and materials" on the Property (D.E. 179-12). In 2024, Dynamic Land, a subcontractor of Intelligent Construction's, demolished at least one bathroom on the Property (D.E. 182 ¶ 35; D.E. 182-5).

## II.     Legal Standards

On a motion for summary judgment, the Court must construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In addition, under Federal Rule of Civil Procedure 56(f)(1), the Court may grant summary judgment for the non-moving party "[a]fter giving notice and a reasonable time to respond." Fed. R. Civ. P. 56(f)(1); *see also Gentry v. Harborage Cottages-Stuart, LLLP*, 654 F.3d 1247, 1261 (11th Cir. 2011). The Supreme Court has explained the summary judgment standard as follows:

---

[6] Intelligent Construction's work on the Project was ongoing as of October 2025 (D.E. 182 ¶ 29).

> [T]he plain language of [Rule 56] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (internal quotation omitted). The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). A dispute about a material fact is genuine if the evidence is such that a reasonable factfinder could return a verdict for the nonmoving party. *Id.* at 248.

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Once the movant makes this initial demonstration, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324; *see also* Fed. R. Civ. P. 56(c). In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

586 (1986). That party must demonstrate that there is a "genuine issue for trial." *Id.* at 587.

An action is void of a material issue for trial "[w]here the record taken as a whole could

not lead a rational trier of fact to find for the nonmoving party." *Id.*

## III. Discussion

In their Motion for Summary Judgment, Defendants Jacek and Olga seek summary

judgment against Ramindesign on its claims for Breach of Contract, Equitable Fee

Adjustment, Unjust Enrichment, Quantum Meruit, and its claim for an Equitable Lein, by

alleging that Ramindesign is barred from recovery on its claims as it was an unlicensed

contractor under Florida law (D.E. 176 at 15). § 489.128(1), Fla. Stat. Alternatively,

Defendants seek summary judgment against Ramindesign on its claim for an Equitable

Lein alleging that Plaintiffs have an adequate remedy at law (D.E. 176 at 16-19).

### A. Defendants' Motion for Summary Judgment

Under Florida law, "contracts entered into on or after October 1, 1990, by an

unlicensed contractor [are] unenforceable in law or in equity by the unlicensed contractor."

Fla. Stat. Ann. § 489.128. In Florida, a contractor is defined as:

> (1) "person who, for compensation, undertakes to, submits a bid to, or does himself
> or herself or by others construct, repair, alter, remodel, add to, demolish, subtract
> from, or improve any building or structure, including related improvements to
> real estate, for others," and (2) "whose job scope is substantially similar to the
> job scope described in one of the paragraphs of [Section 489.105.]"

Fla. Stat. Ann. § 489.105(3). One of the subsections defining job scopes referenced

in Section 489.105(3) includes Section 489.105(3)(b) which defines the job scope of a

8

"building contractor". *Incident365 Fla., LLC v. Ocean Pointe V Condo. Ass'n, Inc.*, 404 So. 3d 475, 477 (Fla. Dist. Ct. App. 2024). A building contractor is defined as:

> [A] contractor whose services are limited to construction of commercial buildings and single-dwelling or multiple-dwelling residential buildings, which do not exceed three stories in height, and accessory use structures in connection therewith or a contractor whose services are limited to remodeling, repair, or improvement of any size building if the services do not affect the structural members of the building.

Fla. Stat. Ann. § 489.105(3)(b). Under Section 489.128, a business organization contractor must be licensed, and "[a] business organization is unlicensed if the business organization does not have a primary or secondary qualifying agent in accordance with . . . the scope of the work to be performed under the contract." Fla. Stat. Ann. § 489.128(1)(a); *See also Taylor Morrison Servs., Inc. v. Ecos*, 163 So. 3d 1286, 1291 (Fla. Dist. Ct. App. 2015) (noting that whether a business is a licensed contactor "turns on whether the business organization is associated with a person licensed for the type of work to be performed under the contract as of the effective date of the contract[.]"). Section 489.119 provides that if an "applicant proposes to engage in contracting as a business organization, including any . . . corporation . . the applicant must apply for registration or certification as the qualifying agent of the business organization." Further, an application for secondary qualifying agent must include an affidavit on a form provided by the Construction Industry Licensing Board (the "Board") attesting that the applicant has authority to supervise all construction work performed by the business organization. § 489.119(2)(b)3, Fla. Stat.

Here, Ramindesign does not contend it had a primary qualifying agent, rather, it contends that "to the extent Ramindesign would be considered a contractor under Chapter 489, Feder and LHF acted as its secondary qualifier" (D.E. 190 at 8).[7] A secondary qualifying agent under Florida law is:

> a person who possesses the requisite skill, knowledge, and experience, and has the responsibility to supervise, direct, manage, and control construction activities on a job for which he or she has obtained a permit, and whose technical and personal qualifications have been determined by investigation and examination as provided in this part, as attested by the department.

§ 489.105(5), Fla. Stat. Accordingly, whether Ramindesign, a business organization, is an unlicensed contractor turns on whether Ramindesign acted as a contractor, and if so, whether Ramindesign was connected to a secondary qualifying agent.

### 1. Ramindesign's Status as a Contractor Under Fla. Stat. Ann. § 489.105

Ramindesign acted as a contractor as defined in section 489.105(3). Under the terms of the Contract, Ramindesign agreed to "design and build a residential two-story single family 'spec' home" on the Property (D.E. 179 ¶ 4) The Contract required Ramindesign to "fully execute the Work in accordance with its design plans" with the term "Work", as defined in the Contract, referring to executing the Project by constructing the required "residential two-story single family 'spec' home at the Property (D.E. 179 ¶ 2; D.E. 179-1 at 106; D.E. 6 at 2).[8] Indeed, the Contract specifically provided that it was "an agreement

---

[7] The Court notes that LHF, a business entity would be unable to serve as a qualifying agent as only an individual may serve as the qualifying agent of a business entity. 489.119(1), Fla. Stat.

[8] The Contract further required Ramindesign to furnish business administration and an adequate supply of workers for the Project (D.E. 179, ¶ 6; D.E. 6, ¶ 4).

for the development of residential real estate" with both parties waiving "the right to contend otherwise." (D.E. 6 at 2). Further, the Contract defined Ramindesign as the "Contractor[,]" and required Ramindesign to "design and build a residential two-story single family 'spec' home[,]" to complete "major construction" on the project, and anticipated that Ramindesign would employ its own construction workers as well as subcontractors to complete the construction on the Project (D.E. 6 at 2, 4).

Accordingly, the Court finds that the Contract and the evidence presented to the Court show that it is undisputed that Ramindesign did, for compensation, undertake to by itself or by others, construct a building for Jacek.[9] Additionally, the Court finds it is undisputed that the building in question was a residential two-story structure referred to as a "spec home", (D.E. 179 ¶ 4; D.E. 6 at 3), and that Ramindesign's job scope was substantially similar to the job scope of a "building contractor" as defined in Fla. Stat. Ann. § 489.105(3)(b). Therefore, the Court finds that there are no issues of material fact as to Ramindesign's status as a contractor, and that it acted as a contractor within the meaning of Section 489.128.

### 2. Feder's Role as Qualifying Agent for Ramindesign

Ramindesign's association with Feder and LHF was not sufficient to render Feder Ramindesign's secondary qualifying agent. Under Florida law, a business entity seeking to become a contractor must:

> procure an individual licensed contractor as its qualifying agent. § 489.119, Fla.Stat. (1991). The qualifying agent must apply for registration or certification with the

---

[9] While Ramindesign contends it did not act as a contractor, it has asserted in the alternative, that Feder acted as its secondary qualifying agent, a contention which is addressed in section 2. of this Order (D.E. 190 at 8).

> Department of Professional Regulation on behalf of the corporation before the corporation can engage in any construction. *See id*. Additionally, the qualifying agent is responsible for supervising, directing, managing, and controlling both the corporation's contracting and construction activities. *See* §§ 489.105(4), .1195, Fla.Stat. (1991).

*Murthy v. N. Sinha Corp.*, 644 So. 2d 983, 984 (Fla. 1994). That is to say, "[i]n Florida, all contractors must be certified or registered with the Department [of Business and Professional Regulation]". *CAM Bradford Homes, LLC v. Arrants*, 415 So. 3d 266, 268 (Fla. Dist. Ct. App. 2025) (citing § 489.115(1), Fla. Stat. (2020)); Fla. Stat. Ann. § 489.105.[10]

Additionally, Florida courts have held that "[t]he obvious purpose of the[] statutes allowing a company to act as a contractor through a licensed contractor is to ensure that projects undertaken by a company are to be supervised by one certified and licensed by the [B]oard." *Alles v. Dep't of Pro. Regul., Const. Indus. Licensing Bd.*, 423 So. 2d 624, 626 (Fla. Dist. Ct. App. 1982). Reasoning that allowing "a contractor to be the 'qualifying agent' for a company without placing any requirement on the contractor to exercise any supervision over the company's work done under his license would permit a contractor to loan or rent his license to the company" which would "completely circumvent the legislative intent that an individual, certified as competent, be professionally responsible for supervising construction work on jobs requiring a licensed contractor." *Id*. Thus, "qualifying agents have the professional duty to supervise the construction projects entered into under their names[]" by the qualified entity. *Gatwood v. McGee*, 475 So. 2d 720, 723

---

[10] The application requirement is mandatory. *CAM Bradford Homes*, 415 So. 3d at 268 ("the applicant must apply for registration or certification as the qualifying agent of the business organization.") (citation omitted).

(Fla. Dist. Ct. App. 1985); *See Boatwright Const., LLC v. Tarr*, 958 So. 2d 1071 (Fla. 5th DCA 2007).

Here, Ramindesign initially maintained it did not use a primary or secondary qualifying agent for the Project (D.E. 179 at 27; D.E. 191 ¶ 27). However, Ramindesign has since alternatively asserted that "to the extent Ramindesign would be considered a contractor under Chapter 489, Feder and LHF acted as its secondary qualifier" (D.E. 190 at 8). Further, Ramindesign maintains that it hired "Feder and LHF as the licensed professionals who acted as the qualifying agents to oversee the project and they bore legal responsibility overseeing the work." (D.E. 191 ¶ 27). However, Ramindesign does not dispute that it was never registered with the Department of Business and Professional Regulation (the "Department") (D.E. 191 ¶ 27).[11]

In this case, it is undisputed that Ramindesign entered into the Contract on January 27, 2022, (D.E. 179 ¶ 2; D.E. 6 at 2), and that Ramindesign sent the LHF Contract to Feder approximately five months later on June 29, 2022 (D.E. 179-8). Additionally, it is undisputed that the LHF Contract entered into evidence was not executed by Ramindesign,[12] and that Ramindesign performed work on the Project for approximately ten months prior to sending Feder the LHF Contract (D.E. 179-1 at 20). To be a licensed

---

[11] In its Statement of Material Facts in Opposition to Defendants Jacek Skarzynski's and Olga Skarzynski's Statement of Material Facts Ramindesign states it "did not register Feder and LHF with the State of Florida as its secondary qualifying agent as it considers itself only a developer, owner's representative and project manager[]" (D.E. 191 ¶ 27).

[12] While LHF Contract submitted into evidence was not signed by Ramindesign, (D.E. 179-9 at 5), the Court's analysis would not be impacted as Feder, an individual, would be required to register Ramindesign with the department as its secondary qualifying agent under Florida law. 489.119, Fla. Stat.

contractor, a business organization must be "legally associated with a person licensed for the type of work to be performed under the contract as of the effective date of the contract." *CAM Bradford Homes*, 415 So. 3d at 268. Additionally, Florida law places requirements on an application for secondary qualifying agent of a business organization seeking to engage in contracting such as submitting an affidavit to the Board attesting that the applicant has authority to supervise all construction work performed by the business organization, and requiring that a qualifying must inform the Department if he ceases to be affiliated with a business organization. § 489.119, Fla. Stat. Here, it is undisputed that Feder did not comply with the registration requirements of a secondary qualifying agent for Ramindesign and so could not legally serve as its qualifying agent (D.E. 191 ¶ 27; 179-7 at 54). *See CAM Bradford Homes*, 415 So. 3d at 269 (holding that "[i]f the [Florida] Legislature had intended the requirements [of § 489.119, Fla. Stat] to have been met by an 'acting' qualified agent, it would not have explicitly provided that only a sole proprietorship may rely on the license of an individual without applying with the Department."). Accordingly, as the only evidence presented in this case shows that Ramindesign was not legally associated with either Feder or LHF when it entered into the Contract, that Ramindesign performed construction on the Project prior to entering into the Contract, and that Feder was never registered as Ramindesign's secondary qualifying agent, the Court finds that it is undisputed that Ramindesign did not possess a secondary qualifying agent at the time it entered into the Contract.

In addition to Ramindesign's lack of legal association with Feder at the time it executed the Contract, Feder's lack of registration with Florida's Department of Business and Professional Regulation (the "Department"), as Ramindesign's secondary qualifying agent render it an unlicensed contractor. "In Florida, all contractors must be certified or registered with the Department[.]" *CAM Bradford Homes*, 415 So. 3d at 268 (citing § 489.115(1), Fla. Stat. (2020), and an applicant proposing to engage in contracting as a business organization, "must apply for registration or certification as the qualifying agent of the business organization." *Id*. Further, "[t]o qualify a business organization contractor for the first time, the agent must apply to the Construction Industry Licensing Board and submit certain documents and a fee[.]" *Id*. Finally, to be a licensed contractor, a business organization must be "legally associated with a person licensed for the type of work to be performed under the contract as of the effective date of the contract." *Id*. Here, it is undisputed that at no time was Feder registered with the Department as Ramindesign's secondary qualifying agent, and that Ramindesign was not qualified with the Board (D.E. 191 ¶ 27)[13]. Thus, the Court finds it is undisputed that Ramindesign never had a qualifying agent. *See CAM Bradford Homes*, 415 So. 3d at 270.

While the aforementioned registration violations render Ramindesign an unlicensed Contractor, Feder additionally did not exercise sufficient supervision over the Project to be categorized as Ramindesign's qualifying agent. Feder's role on the Project was to receive notifications from the building department and go to the Property to ensure that the work

---

[13] In fact, Feder was not aware what the term secondary qualifying agent meant (179-7 at 54).

was done properly (D.E. 179 ¶ 30; D.E. 191 ¶ 30). However, Feder stated during his deposition that "he didn't want to interfere with any of the work" done on the Project so he would go to the Property after hours as he "had no control over [the workers] and I didn't want control over them" (D.E. 179 ¶ 30). Feder's physical presence on the property involved him going to the Project approximately two to three times a week, typically twice a week, for a half hour to an hour at a time (D.E. 179-7), and all his visits to the Project were after hours except approximately ten to twelve visits he made during working hours when he "had nothing else to do." (D.E. 179-7 at 74-75) (D.E. 179 ¶ 31). Indeed, LHF did not hire any subcontractors, did not buy any materials, and did not verify any materials (D.E. 179-7 at 27-8) (D.E. 179 ¶ 32). By contrast, Ramindesign had supervisory personnel at the Property, (179-1 at 137), and Alyesian himself went to the Property several times every day, up to seven or eight times a day, to ensure the work progressed (D.E. 179 ¶ 35; D.E. 191 ¶ 35). As Section 489.105(4) and (5) require a qualifying agent to have the responsibility to "control the construction activities" on the job for which he obtained the permit, the Court finds it is undisputed that neither LHF nor Feder exercised the necessary control required under the statute and therefore did not act as qualifying agent.

Accordingly, for the reasons stated above, the Court finds that Ramindesign acted as an unlicensed contractor by constructing a structure at the Property without a suitable

qualifying agent, and it cannot maintain its claims under the Contract against Jacek and Olga.[14]

### 3. Ramindesign's Equitable Lien Claim

As the Court has concluded that Ramindesign is an unlicensed contractor it cannot maintain its equitable lein claim in Count V of its Amended Complaint (D.E. 5). Florida law provides that "if a contract is rendered unenforceable pursuant to these provisions, no lien or bond claim will exist in favor of the unlicensed contractor for any labor, services, or materials provided under the contract or any amendment to it." § 489.128(2), Fla. Stat. Thus, summary judgment is granted in favor of Jacek and Olga and against Ramindesign on this claim.

### B. Ramindesign's Motion for Partial Summary Judgment

In their Motion for Partial Summary Judgment RDD and Ramindesign seek partial summary judgment against Jacek on three separate grounds: 1) that Jacek's Breach of Contract and Negligence Counterclaims lack essential damages elements, 2) that Jacek's alleged spoliation of evidence warrants the sanction of dismissal of his Breach of Contract and Negligence claims, and 3) that Jacek's Civil Theft and Conversion Claims are not separate and apart from his Breach of Contract Claim.

---

[14] In its ruling, the Court does not determine that Ramindesign is unable to maintain its defenses against Counter-Plaintiff Jacek's claims. *See Brock v. Garner Window & Door Sales, Inc.*, 187 So. 3d 294, 296 (Fla. Dist. Ct. App. 2016) (holding that while "Section 489.128 precludes an unlicensed contractor from enforcing a contract. It does not preclude an unlicensed contractor from defending against an action to enforce a contract by the owner.").

**1**. **Damages Elements in Jacek's Breach of Contract and Negligence Counterclaims**

In its Motion for Partial Summary Judgment, Rammindesign argues that Jacek's missing Essential Damages Element bars his Breach of Contract and Negligence counterclaims (D.E. 181 at 6). Florida courts have held that in cases involving breach of a construction contract, the non-defaulting party bears the burden of showing actual expenditures caused by the breach, and the defaulting party then has the burden to show the unreasonableness of the claimed damages. *Tuttle/White Constructors, Inc. v. Montgomery Elevator Co.*, 385 So. 2d 98, 100 (Fla. 5th DCA 1980); *Centex-Rooney Constr. Co. v. Martin Cty.*, 706 So. 2d 20, 27 (Fla. 4th DCA 1997). The measure of damages to repair or replace defective construction is the "reasonable cost" to remedy the defect. *Grossman Holdings Ltd. v. Hourihan*, 414 So. 2d 1037, 1039 (Fla. 1982). In proving those damages, the owner is not required to complete repairs to properly support a breach of construction contract damages. Where the repairs have not yet been performed, estimated costs may be used. *Kritikos v. Andersen*, 125 So. 3d 885 (Fla. 4th DCA 2013).

Here, Counter-Plaintiff has submitted a report by an expert detailing the actual expenditures he made to allegedly remedy defective construction (D.E. 183-2 pp. 7-13). Counter-Defendants dispute these calculations, claiming "there remains a large proof gap for [Counter-Plaintiff's] claimed damages." (D.E. 201 at 2). Accordingly, the Court finds that genuine issues of material fact exist as to Counter-Plaintiff's claimed damages for the

reasonable cost to correct the alleged defects, and the determination of damages is an issue best left for trial.

### 2. Spoliation of Evidence

Jacek's alleged spoliation of evidence for continuing construction on the Property does not warrant the sanction of dismissal of his Breach of Contract and Negligence Claims. Spoliation is "the destruction of evidence or the significant and meaningful alteration of a document or instrument." *Tesoriero v. Carnival Corp.*, 965 F.3d 1170, 1184 (11th Cir. 2020) (quoting Green Leaf Nursery, 341 F.3d at 1308 (11th Cir. 2003)). Spoliation sanctions are typically "imposed under the broad discretion of the district court, which has inherent power to 'manage its own affairs and to achieve the orderly and expeditious disposition of cases.'" *Skanska USA Civ. Se. Inc. v. Bagelheads, Inc.*, 75 F.4th 1290, 1311 (11th Cir. 2023) (citation omitted). "Because spoliation is an evidentiary matter, federal law governs the imposition of spoliation sanctions." *Id*. If a court finds that a party has in fact spoliated evidence, it must then decide whether sanctions are warranted, and, if so, what sanctions to impose. *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 945 (11th Cir.2005). In making this determination, the court should consider:

> (1) whether the movant was prejudiced as a result of the destruction of evidence; (2) whether the prejudice could be cured; (3) the practical importance of the evidence; (4) whether the alleged spoliator acted in good or bad faith; and (5) the potential for abuse if expert testimony about the evidence is not excluded. *Id*.

19

Here, Ramindesign and RDD allege that Jacek was fully aware of his breach of contract and negligence claims which alleged construction defects, yet he demolished bathrooms, removed ceilings, removed drywall and framing, removed HVAC ductwork, removed roofing tiles and waterproofing materials, and applied Chukum over the Property's stucco (D.E. 181 at 11-12). Further, Ramindesign and RDD contend that by taking these actions during the pendency of this litigation and without notice to Ramindesign and RDD he knowingly deprived the Counter-Defendants of the opportunity to inspect the alleged defects (D.E. 181 at 11-12). However, Jacek contends that prior to resuming any construction work on the Project, he had detailed photographs and videos taken of the Project and the entire house, which document the state and condition of the construction (D.E. 184-6; D.E. 185 ¶ 7). Further, Jacek maintains that he had a representative of the Project's architectural firm of record come to the house to determine if the architectural plans and specifications had been followed by Ramindesign and issue a report with photographs (D.E. 184 at 6-7; D.E. 177-4). [15] As experts investigated and documented the condition of the Project before Jacek conducted additional construction and demolition, and as these experts are available to Ramindesign and RDD, the Court finds that there is little, if any, prejudice against the Counter-Defendants and what prejudice exists can easily be cured. Accordingly, the Court concludes that spoliation sanctions are inappropriate, and Ramindesign's and RDD's are not entitled to relief on these grounds.

---

[15] The architectural firm of record was hired by Ramindesign (D.E. 177-4).

### 3. Jacek's Theft and Conversion Claims

A plaintiff seeking damages for civil theft and/or conversion must establish that he or she has the right to possess the property. *Fogade v. ENB Revocable Tr.*, 263 F.3d 1274, 1291 (11th Cir. 2001) ("Under Florida law, a conversion is 'an unauthorized act which deprives another of his property permanently or for an indefinite time.'"); *Palmer v. Gotta Have it Golf Collectibles, Inc.*, 106 F. Supp. 2d 1289, 1303 (S.D. Fla. 2000) (To establish civil theft under Florida law, "it is necessary to show not only that defendant obtained or endeavored to obtain the plaintiff's property, but that he did so with felonious intent to commit theft."). This requires that the plaintiff "allege facts sufficient to show ownership of the subject property and facts that the other party wrongfully asserted dominion over that property." *BluestarExpo, Inc. v. Enis*, 568 F. Supp. 3d 1332, 1349 (S.D. Fla. 2021) (citations omitted). Further, Counter-Defendants seemingly repeat their argument from their motion to dismiss, and as the Court noted in its Order denying Ramindesign and RDD's motion to dismiss "[a]t this stage in the litigation, Mr. Skarzyski has sufficiently alleged he "is the owner of the Materials and was entitled to immediate possession" because he "paid Ramindesign in full for the Materials." (D.E. 166 at 7). Accordingly, having considered the evidence presented, the arguments of the parties, and the record as a whole, Ramindesign and RDD's motion for summary judgment is denied as to Jacek's claims for theft and conversion.

**IV.     Conclusion**

The Court finds that Ramindesign acted as an unlicensed contractor on the Project and therefore it cannot maintain its claims in its Amended Complaint. The Court further finds that genuine disputes of material fact exist between the parties as to Jacek's claims for Breach of Contract and Civil theft, and that any spoliation of the evidence that occurred by Jacek continuing the Project does not warrant sanctions at this time.

Accordingly, it is **ORDERED AND ADJUDGED** that:

**1.**     Defendants Jacek Skarzynski and Olga Skarzynski's Motion for Summary Judgment (D.E. 176) is **GRANTED** in the manner stated above; and

**2.**     Ramindesign, LLC and Ramindesign+Development, LLC's Motion for Partial Summary Judgment (D.E. 181) is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida this 8th day of June, 2026.

**JOAN A. LENARD**
**UNITED STATES DISTRICT JUDGE**

22