**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 23-24838-CIV-LENARD

**RAMINDESIGN, LLC,**

Plaintiff,

**v.**

**JACEK SKARZYNSKI and OLGA SKARZYNSKI,**

Defendants.
_________________________________/

**JACEK SKARZYNSKI**,

Counter-Plaintiff,

**v.**

**RAMINDESIGN, LLC, RAMINDESIGN + DEVELOPMENT, LLC,**

Counter-Defendants.
_________________________________/

**ORDER DENYING RAMINDESIGN'S MOTION FOR RECONSIDERATION (D.E. 264)**

**THIS CAUSE** is before the Court on Plaintiff Ramindesign, LLC's ("Ramindesign") Motion for Reconsideration of Order Granting the Skarzynskis' Motion for Summary Judgment and Incorporated Memorandum of Law ("Motion," D.E. 264) filed July 31, 2026. Defendants Jacek Skarzynski and Olga Skarzynski filed a Response on August 14, 2026. (D.E. 270). Plaintiff filed a Reply on August 21, 2026 (D.E.275).

Plaintiff's Motion, and the record as a whole, having been read and considered the Court rules as follows:

## I. Background and Procedural History[1]

On January 5, 2024, Plaintiff filed its Amended Complaint. (D.E. 5) against Defendants. On February 19, 2025, Defendants filed their Third Amended Answer, Affirmative Defenses, and Counterclaims in Response to the Amended Complaint. (D.E. 148). On December 1, 2025, Defendants filed their Motion for Summary Judgment, (D.E. 176), to which Plaintiff filed a Response, (D.E. 190), and Defendants filed a Reply. (D.E. 205). Also on December 1, 2025, Ramindesign, LLC's and Ramindesign+Development, LLC filed their Motion for Partial Summary Judgment and Memorandum of Law, (D.E. 181), to which Jacek Skarzynski filed a Response, (D.E. 184), and Ramindesign, LLC and Ramindesign+Development, LLC filed a Reply. (D.E. 201). On June 8, 2026, this Court entered an Order on the parties' cross-motions for summary judgment, (D.E. 242), granting Defendants' Motion for Summary Judgment, (D.E. 176), and denying Ramindesign, LLC and Ramindesign+Development, LLC's Motion for Summary Judgment. (D.E. 181).

On July 31, 2026, Plaintiff filed the instant Motion for Reconsideration of Order Granting the Skarzynskis' Motion for Summary Judgment ("Motion for Reconsideration"). (D.E. 264). On August 14, 2026, Defendants filed an Opposition to Ramindesign, LLC's

[1] The Court limits inquiry to matters relevant to the instant Motion. The reader is referred to the Court's Order on cross-motions for summary judgment Order (D.E. 242) for a thorough recounting of the facts.

Motion for Reconsideration. (D.E. 270). On August 21, 2026, Plaintiff filed a Reply in Support of its Motion for Reconsideration (D.E. 275).

In its Motion for Reconsideration, Ramindesign LLC contends that the Court erred in granting summary judgement to Defendants. Ramindesign "seeks reconsideration of three aspects of the Order," specifically contending that the Court committed error by 1) failing to reconcile the waiver in the parties' Contract with the finding that Ramindesign acted as a contractor, 2) overlooking record evidence establishing that Ramindesign's association with Feder and LHF preceded the effective date of the Contract, and contending 3) that the Court's analysis of Federer's supervision of the Project was irrelevant to whether he was Ramindesign's qualifying agent under § 489.128. Additionally, Ramindesign notes to the Court its requests for reconsideration of the "timing and supervision findings" in the Order would not affect the Court's finding that "that Feder never registered with DBPR as Ramindesign's secondary qualifying agent[.]" (D.E. 246 at 3). However, Ramindesign requests reconsideration of those findings to ensure the accuracy of the record and to preserve the issues for further proceedings. (D.E. 246 at 3).

## II. Legal Standards

Although the Federal Rules of Civil Procedure do not expressly provide for a motion for reconsideration, such a motion "falls within the ambit of either Rule 59(e) ("motion to alter or amend a judgment) or Rule 60(b) ("motion for relief from judgment or order")." *See Region 8 Forest Serv. Timber Purchasers Council v. Alcock*, 993 F.2d 800, 806 n.5 (11th Cir. 1993). The party moving for reconsideration of an order must

demonstrate "newly-discovered evidence or manifest errors of law or fact." *Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1344 (11th Cir. 2010). The purpose of a motion for reconsideration is not to ask the Court to "reexamine an unfavorable ruling." *Id.* A party may not use a motion for reconsideration "to relitigate old matters, raise argument or present evidence that could have been raised" previously. *Michael Linet, Inc. v. Vill. of Wellington, Fla.*, 408 F.3d 757, 763 (11th Cir. 2005). Indeed, "reconsideration of a previous order is an extraordinary remedy to be employed sparingly." *Burger King Corp. v. Ashland Equities, Inc.*, 181 F. Supp. 2d 1366, 1370 (S.D. Fla. 2002).

## III. Discussion

### a. Waiver.

In its Motion, Ramindesign contends that the Court's Order's reliance on the Contract's waiver provision is incongruous with its finding that Ramindesign acted as a contractor, and that the Order does not address additional language in the Contract "confirming the Parties' agreement [was] that Ramindesign was not acting as a general contractor." (D.E. 264 at 5) (cleaned up). The Court firstly notes that "as a matter of state policy, the [Florida] Legislature has imposed a substantial penalty on the unlicensed contractor as the wrongdoer with regard to a construction contract." *Earth Trades, Inc. v. T & G Corp.*, 108 So. 3d 580, 586 (Fla. 2013). So much so that "the unlicensed contractor has no rights or remedies for the enforcement of the contract." *Id*. The purpose of so greatly disadvantaging an unlicensed contractor is to "protect the public and to prod contractors

into obtaining the required licensing[.]" *Id.* Florida courts have held that contracts whose purposes or objects are contrary to a law or policy of the state are unenforceable as against public policy. *See Loewe v. Seagate Homes, Inc.*, 987 So. 2d 758, 760 (Fla. Dist. Ct. App. 2008) (holding exculpatory clause purporting to release a contractor from liability for failure to comply with building codes was against public policy); *Harrell v. BMS Partners, LLC*, 350 So. 3d 361, 368 (Fla. Dist. Ct. App. 2022) (holding exculpatory clause purporting to absolve a retailer of strict liability for injuries caused by defects in products violates public policy). Accordingly, as it appears clear that Fla. Stat. Ann. § 489.128 reflects a clear public policy, both to protect homeowners and the public, and to induce contractors to obtain and maintain licenses, the Court finds that allowing the enforcement of a waiver clause purporting to effectively void the statutory penalty imposed on an unlicensed contractor for its failure to obtain a license would violate Florida's public policy.

Ramindesign's argument further appears "to relitigate old matters, [and] raise [an] argument . . . that could have been raised" previously. *Michael Linet*, 408 F.3d at 763. However, the Court will consider whether the Contract's waiver is in fact incongruous with the Court's finding that Ramindesign acted as a contractor. In its Order, the Court held that:

> [u]nder the terms of the Contract, Ramindesign agreed to "design and build a residential two-story single family 'spec' home" on the Property (D.E. 179 ¶ 4) The Contract required Ramindesign to "fully execute the Work in accordance with its design plans" with the term "Work", as defined in the Contract, referring to executing the Project by constructing the required "residential two-story single family 'spec' home at the Property (D.E. 179 ¶ 2; D.E. 179-1 at 106; D.E. 6 at 2).

(D.E. 242 at 10). Further, the Court noted that "the Contract specifically provided that it was 'an agreement for the development of residential real estate' with both parties waiving 'the right to contend otherwise.'" (D.E. 6 at 2).

The Contract did not define the term "development" and did not use the term "developer" within the waiver, and Ramindesign has cited no cases, statutes, or other sources defining these terms. (*See* D.E. 264). Regardless, Ramindesign contends that its characterization as a "spec developer" is wholly inconsistent with its characterization as a contractor. (D.E. 264 at 8).[2] In its Order, the Court noted that:

> In Florida, a contractor is defined as: (1) "person who, for compensation, undertakes to, submits a bid to, or does himself or herself or by others construct, repair, alter, remodel, add to, demolish, subtract from, or improve any building or structure, including related improvements to real estate, for others," and (2) "whose job scope is substantially similar to the job scope described in one of the paragraphs of [Section 489.105.]" Fla. Stat. Ann. § 489.105(3).

(D.E. 242 at 8). Further, the Court held "that Ramindesign's job scope was substantially similar to the job scope of a 'building contractor' as defined in Fla. Stat. Ann. § 489.105(3)(b)." (D.E. 242 at 11). With a building contractor being defined as:

> A contractor whose services are limited to construction of commercial buildings and single-dwelling or multiple-dwelling residential buildings, which do not exceed three stories in height, and accessory use structures in connection therewith or a contractor whose services are limited to remodeling, repair, or improvement of any size building if the services do not affect the structural members of the building. Fla. Stat. Ann. § 489.105(3)(b)

---

[2] Black's Law Dictionary defines a developer as "[a] person or company whose business is to buy land and then either to build on it or to improve the existing buildings there[,] DEVELOPER, Black's Law Dictionary (12th ed. 2024), and defines development, in relevant part, as "[t]he conversion of land to a new purpose, as by planning and building new houses, buildings, streets, etc.; specif., a substantial human-created change to improved or unimproved real estate, including the construction of buildings or other structures[.]" DEVELOPMENT, Black's Law Dictionary (12th ed. 2024).

(D.E. 242 at 9). Accordingly, Ramindesign's self-classification as "spec developer" and the contract's waiver provision providing it was for the "development of commercial real estate[,]" both appear to show that Ramindesign's role was to construct and make improvements to residential real estate owned by Jacek and Olga Skarzynski for eventual resale, roles which are consistent with the Court's finding that Ramindesign acted as a contractor within the meaning of Fla. Stat. Ann. § 489.105(3).

**b. Timing of Ramindesign's Association with Feder and LHF**

In its Motion, Ramindesign contends "Ramindesign's association with Feder predates the Agreement by more than the timing reflected in the Order[.]" (D.E. 264 at 12). In its Order the Court held:

> the only evidence presented in this case shows that Ramindesign was not legally associated with either Feder or LHF when it entered into the Contract, that Ramindesign performed construction on the Project prior to entering into the Contract, and that Feder was never registered as Ramindesign's secondary qualifying agent, the Court finds that it is undisputed that Ramindesign did not possess a secondary qualifying agent at the time it entered into the Contract.

(D.E. 242 at 14). Indeed, as the Court noted:

> [t]he contract filed with the Court between Ramindesign and LHF ("LHF Contract") was signed by Feder but was not signed by Ramindesign and was undated (D.E. 179-9 at 5; D.E. 179-1 at 195). Additionally, [Ramin] Aleysian sent the LHF Contract to Feder on June 29, 2022 (D.E. 179-8), approximately five months after the Contract was executed on January 27, 2022 (D.E. 6 at 2).

(D.E. 242 at 5). Indeed, "[t]o be considered licensed under section 489.128(1), a business organization must have a 'qualifying agent in accordance with this part concerning the scope of the work to be performed under the contract,' and this

determination must be made as of the contract's effective date when, as here, that date is known." *Taylor Morrison Servs., Inc. v. Ecos*, 163 So. 3d 1286, 1289 (Fla. Dist. Ct. App. 2015) (quoting Section 489.128(1)(c)). Ramindesign's contention that it had some association with Feder and LHF prior to the timeline specified in the Order appears largely irrelevant, as the Court's Order turned on Feder's legal association with Ramindesign. (D.E. 242 at 14). The Court noted that Florida law places requirements on secondary qualifying agents "such as submitting an affidavit to the Board attesting that the applicant has authority to supervise all construction work performed by the business organization, and requiring that a qualifying must inform the Department if he ceases to be affiliated with a business organization. § 489.119, Fla. Stat[.]" *See CAM Bradford Homes*, 415 So. 3d at 269 (holding that "[i]f the [Florida] Legislature had intended the requirements [of § 489.119, Fla. Stat] to have been met by an 'acting' qualified agent, it would not have explicitly provided that only a sole proprietorship may rely on the license of an individual without applying with the Department.").

Accordingly, the Court sees no need to revisit its findings on the timing of when Feder and Ramindesign entered into a contract as these findings are undisputed and tangential to the Court's findings about the legal association of Feder as Ramindesign's purported qualifying agent.

**c. Order's Supervision Finding**

Ramindesign contends that the Court's finding that "neither LHF nor Feder exercised the necessary control required under the statute and therefore did not act as qualifying agent[]" was "irrelevant to whether a business organization has a qualifying agent under § 489.128[.]" (D.E. 264 at 3). In support of its position, Ramindesign relies on the Florida First District Court of Appeal's decision in *Taylor Morrison Services, Inc. v. Ecos*, which held that a business organization's licensure status turns on whether it was associated with a person licensed for the type of work to be performed "as of the effective date of the contract, irrespective of whether that person ultimately obtains the permit and supervises the construction under the contract." 163 So. 3d 1286 (Fla. 1st DCA 2015); (D.E. 264 at 15). As stated above, the Court held that Ramindesign was not legally associated with Feder as its qualifying agent based on several factors, including that Ramindesign sent a contract to Feder approximately five months after it entered into the Contract with Jacek Skarzynski, that the contract between Ramindesign and Feder was unexecuted by Ramindesign, and that Ramindesign had performed work on the project for approximately ten months prior to executing the Contract. (D.E. 242 at 5).

Nevertheless, the Court largely agrees with Ramindesign that a secondary qualifying agent's failure to properly supervise a construction project would likely be insufficient to render that business organization unlicensed if he was legally associated with the business organization at the time of the contract. However, in its Memorandum in Opposition to Defendants Motion for Summary Judgment, Ramindesign maintained that although it "conceded in an interrogatory answer that it did not have a certified primary or

secondary qualifier on file with the State of Florida as it did not believe it was a construction contractor, it has clarified that should Ramindesign be considered a contractor, Feder and LHF acted as its qualifier for the project for purposes of Section 489.128(1)[.]" (D.E. 190 at 8). Indeed, Ramindesign's response went to great lengths detailing Feder's role on the project, noting that he "is a licensed Building Contractor in Florida[,]" "was there to ensure that the job was done properly, it was done according to the codes and to the plans that were on the job site[,]" " observed the conditions of the house[,]" and that he "went to the jobsite multiple times weekly to ensure the work was done properly, the job was running on schedule and the work passed inspection[.]" (D.E. 190 at 8). Thus, Ramindesign's own argument to the Court was that despite a lack of formal association, Feder's role and activities on the project constituted a de facto qualifying agent. (D.E. 190 at 8).

Accordingly, while Ramindesign is correct that a lack of post-association supervision is likely insufficient by itself to show an absence of a qualifying agent, the Court's finding noted that even if the Court were to accept Ramindesign's argument that Feder could have served as Ramindesign's qualifying agent, despite the LHF Contract being unexecuted and sent five months after Ramindesign entered into the Contract, Ramindesign performing work on the Project for approximately ten months prior to sending Feder a contract, and Federer never registering Ramindesign with Florida's Department of Business and Professional Regulation, Feder did not in fact perform the duties expected of a qualifying agent under Florida law as he "did not exercise sufficient supervision over the Project to be categorized as Ramindesign's qualifying agent." (D.E.

242 at 15).[3] Therefore, as the Court addressed Ramindesign's own contention that Feder performed the duties of a qualifying agent despite not registering Ramindesign with the Department, the Court sees no error.

## IV. Conclusion

Accordingly, it is **ORDERED AND ADJUDGED** that Plaintiff Ramindesign, LLC's Motion for Reconsideration of Order Granting the Skarzynskis' Motion for Summary Judgment (D.E. 264) is **DENIED**;

**DONE AND ORDERED** in Chambers at Miami, Florida this 23rd day of October, 2026.

Joan A. Lenard

**JOAN A. LENARD**
**UNITED STATES DISTRICT JUDGE**

[3] "[A] qualifying agent is responsible for supervising, directing, managing, and controlling both the corporation's contracting and construction activities. See §§ 489.105(4), .1195, Fla.Stat. (1991)." *Murthy v. N. Sinha Corp.*, 644 So. 2d 983, 984 (Fla. 1994); *CAM Bradford Homes*, 415 So. 3d at 269 (holding that "[i]f the [Florida] Legislature had intended the requirements [of § 489.119, Fla. Stat] to have been met by an 'acting' qualified agent, it would not have explicitly provided that only a sole proprietorship may rely on the license of an individual without applying with the Department."); *Alles v. Dep't of Pro. Regul., Const. Indus. Licensing Bd.*, 423 So. 2d 624, 626 (Fla. Dist. Ct. App. 1982) (holding that allowing "a contractor to be the 'qualifying agent' for a company without placing any requirement on the contractor to exercise any supervision over the company's work done under his license would permit a contractor to loan or rent his license to the company" which would "completely circumvent the legislative intent that an individual, certified as competent, be professionally responsible for supervising construction work on jobs requiring a licensed contractor.").